## CARSON *v.* HYATT & Another.

ERROR TO THE SUPREME COURT OF THE STATE OF SOUTH CAROLINA.

## SAME *v.* SAME.

APPEAL FROM THE CIRCUIT COURT OF THE UNITED STATES FOR THE
DISTRICT OF SOUTH CAROLINA.

Argued April 20, 21, 1886.—Decided May 10, 1886.

An action was commenced in a court of the State of South Carolina against plaintiff in error and other defendants. Plaintiff in error, after an answer prepared and signed by counsel had been filed, in which it was stated that she was a citizen of New York, petitioned for its removal to the Circuit Court of the United States on the ground of a separable controversy, alleging that she was a citizen of Massachusetts, that plaintiffs below were citizens of New York, except one, a citizen or subject of Spain, and that the other defendants below were citizens of different States named other than Massachusetts. The State court disallowed the petition for removal on the ground that it appeared from the answer that plaintiff in error was a citizen of New York: *Held*, That this question was one of fact to be determined by the Circuit Court of the United States, and not by the State court; that plaintiff in error was not estopped by the answer from setting up that she was a citizen of New York; and that, as a case for removal was made out on the face of the petition, the petition was improperly denied.
*Stone* v. *South Carolina*, 117 U. S. 430 affirmed.

On the proof the court is satisfied that plaintiff in error was, when the suit was commenced, and continued to be, a citizen of Massachusetts; and that on her petition the cause should have been removed to the Circuit Court of the United States.

The court also holds, on an examination of the record and the proof and the Code of South Carolina, that the petition for the removal in this case was made "at the term at which the cause could first be tried" according to the meaning of that phrase as construed in *Babbit* v. *Clark*, 103 U. S. 606 ; and *Pullman Palace Car Co.* v. *Speck*, 113 U. S. 84.

The case is stated in the opinion of the court.

*Mr. H. S. Young* and *Mr. James Lowndes* for plaintiff in error and appellant.

*Mr. Edward McCrady, Jr.*, for defendants in error and appellees.

Mr. Chief Justice Waite delivered the opinion of the court.

The records in these cases show that William A. Carson, a citizen of South Carolina, died on the 17th of August, 1856, leaving a will by which he devised the bulk of his property, real and personal, to his executors, Alexander Robertson and John F. Blacklock, substantially in trust for his widow, Caroline Carson, and his sons, William Carson and James P. Carson, but with a power of sale in the executors. Under these circumstances the executors sold a plantation known as "Dean Hall" to Elias N. Ball, and for the unpaid purchase money he, on the 2d of March, 1857, executed his bonds conditioned for the payment in all of the sum of $31,000, in five equal annual instalments from January 14, 1857, with interest from March 2, payable annually, and secured by mortgage on the property. The debts of the estate were all paid in June, 1857, and from that time the executors held the bonds and mortgage of Ball in trust for Mrs. Carson and her two sons. The sons afterwards assigned their interest in the bonds to their mother. Mrs. Carson left South Carolina early in 1861 and went to New York to live. She has never since returned to South Carolina. Her son William came of age in 1863, but he left South Carolina before the late civil war and has been absent ever since. James did not

come of age until after the war, and the executor Blacklock was absent from the United States during the whole of it.

In March, 1863, the firm of Hyatt, McBurney & Company, doing business in Charleston, bought "Dean Hall" from Ball, and he, at their request, induced Robertson, the only trustee then in America, to accept payment of the bonds held for Mrs. Carson in Confederate treasury notes and discharge the mortgage. This being done, Ball conveyed the property to Edmund Hyatt, William McBurney, William Hasseltine, Thomas R. McGahan, and Alfred L. Gillespie, who composed the firm of Hyatt, McBurney & Co. On the 8th of May, 1863, Hyatt sold his interest in the firm to his other partners, and executed to them a conveyance of this property among the other assets, and the remaining partners gave to him a bond for $40,000, secured by mortgage on these premises.

After the war ended Mrs. Carson, then a citizen of New York, brought suit in the Circuit Court of the United States for the District of South Carolina to re-establish the mortgage and to set aside the release which had been executed by Robertson, and for a foreclosure. A decree was entered by the Circuit Court in accordance with the prayer of the bill, but on appeal to this court that decree was reversed for want of proper parties, and the cause sent back for further proceedings. *Robertson* v. *Carson,* 19 Wall. 94. When the case got back to the Circuit Court the required additional parties were made, and another decree was finally entered, establishing the rights of Mrs. Carson, and ordering a sale of the property. This decree was affirmed here at the October term, 1878. *McBurney* v. *Carson*, 99 U. S. 567. Hyatt was not a party to that suit, he being then a citizen of New York, the same as Mrs. Carson at that time. Under this decree the property was sold and bought by Mrs. Carson. Hyatt died in New York on the 20th of September, 1876, leaving a will appointing his daughter, Mary A. Hyatt, executrix, and Joaquin Delmonte executor. Mary A. Hyatt and Julia Delmonte are devisees under the will and heirs-at-law of his estate, and Mary E. Hyatt is his widow and an heir-at-law. Joaquin Delmonte is a citizen or subject of Spain, and all the others are citizens of New York.

At some time, but precisely when does not appear from the records, these parties filed in the Court of Common Pleas of Charleston, South Carolina, their complaint, which was sworn to on the 15th of October, 1879, against William McBurney, William Hasseltine, Alfred L. Gillespie, and Thomas R. McGahan, "members of the late firm of Hyatt, McBurney & Co.," and Caroline Carson, for the foreclosure of the mortgage given Hyatt on his retirement from the firm.   It does not appear how or by what process the defendants were brought into court, but there is in the record a stipulation of which the following is a copy :

" Mary A. Hyatt, as Executrix and as Devisee and Heir-at-law of the late Edmund Hyatt; Joaquin Delmonte, Executor of the said Edmund Hyatt; Mary E. Hyatt, Widow and Heir-at-law of the said Edmund Hyatt, deceased ; and Julia Delmonte, as Devisee and Heir-at-law of the said Edmund Hyatt,

*vs.*

" William McBurney, William Hasseltine, Alfred L. Gillespie, and Thomas R. McGahan, members of the late firm of Hyatt, McBurney & Co., and Caroline Carson.

" The time for the defendants in this case to answer having expired, on motion of McCrady & Son, plaintiffs' attorneys, it is ordered that the case be referred to W. D. Clancy, Esq., one of the masters of this court, to take testimony and report the same; and, with the consent of the said plaintiffs' attorneys, it is further ordered that the defendant Caroline Carson do have further time to answer the complaint herein, to wit, until the twenty-fourth day of January next, and that she be allowed to file the same, under the signature of her counsel, who has entered an appearance in the cause, without oath thereto.

" December 16, 1879.                    A. P. ALDRICH.

" We consent.                              McCRADY & SON,
                                                A. G. MAGRATH."

The record shows an answer of Mrs. Carson, not under oath, and signed only by her counsel, setting up her defence upon

the same facts on which she recovered in the other suit. In this answer it is, among other things, stated, that early in 1861 she "left South Carolina and went to New York, where she has ever since resided and had her domicil." This answer was filed January 31, 1880, and, on the 16th of February, Mrs. Carson presented her petition for the removal of the suit to the Circuit Court of the United States, the material parts of which are as follows:

" To the honorable the judges of the said court:

" Your petitioner, Caroline Carson, respectfully sheweth that the above-entitled suit is of a civil nature, and is now pending in this court; the matter or amount in dispute is, exclusive of costs, the sum or value of five hundred dollars, and is of the value of over ten thousand dollars; that the controversy in the said suit is between citizens of different States and between citizens of a State and a citizen or subject of a foreign State; that your petitioner was at the beginning of this suit, and still is, a citizen of the State of Massachusetts; that the said Joaquin Delmonte then was, and still is, a citizen or subject of Spain, and all the other parties, plaintiffs above mentioned, then were, and still are, citizens of the State of New York; that William McBurney and Thomas R. McGahan then were, and still are, citizens of South Carolina; that Alfred L. Gillespie then was, and still is, a citizen of Tennessee; and William Hasseltine then was, and still is, a citizen of California.

" Your petitioner further says that in the above-mentioned suit there is a controversy which is wholly between citizens of different States and between a citizen of a State and a foreign State, namely, between the said plaintiffs and your petitioner, and which can be wholly determined as between them."

Accompanying this petition was the following affidavit:

" Personally appeared before me James Lowndes, and made oath that he is the attorney of Caroline Carson, and has read her petition for the removal of the said cause to the Circuit Court of the United States for the District of South Carolina, and that the facts therein stated are true to the best of his.

information and belief, save that he cannot aver that Dean Hall is of greater value than five thousand dollars and five hundred dollars; that his information as to the domicil of Hasseltine is drawn from a statement made to him by some person, whose name he cannot recall; that his information as to the domicil of Caroline Carson is drawn from these facts, viz.: That about the 1st July, 1877, he received in due course of mail a letter from the said Caroline Carson, dated at Brookline, Massachusetts, in which she informed the deponent that she had made a declaration or affidavit of her change of domicil from New York to Massachusetts; and that deponent continued to receive letters from her in the latter State during the month of July, 1877, and he knows her purpose to have been to become a citizen of Massachusetts; and he knows that she has not in fact for many years resided in New York.

"JAMES LOWNDES."

On the 25th of March the court refused to stop further proceedings, giving its reasons therefor as follows:

"The plaintiffs in this case, except one, a Spanish subject, are citizens of the State of New York, and the controversy, as appears by the pleadings, is wholly between them and the defendant Caroline Carson, who, in her answer, states that she is also a citizen of that State. She has also filed with her answer an exhibit of a previous case in the United States Court relating to the same matter, in which case she was plaintiff, suing as a citizen of the State of New York. No motion has been made by her for leave to amend or withdraw her answer, nor has any affidavit or other testimony been submitted showing that her answer was erroneous and the matter therein in reference to her citizenship was inserted by inadvertence or mistake. After this case had been referred to the master, and after the filing of her said answer by the said defendant, and the master, attended by the attorneys for plaintiffs and said defendant, had finished taking the testimony offered by the plaintiffs, the said defendant filed a petition in this court praying a removal of this case to the Circuit Court of the United States, and alleging that she is a citizen of the State of Massachusetts.

"That petition is not properly verified, and the insufficient affidavit by her attorney does not state any matter which would justify me in disregarding the positive statement in her answer and exhibit.

"I, therefore, hold that the controversy in this case is between a citizen of the State of New York on the one side and other citizens of the same State and a Spanish subject on the other side; and, further, that the petition of defendant for the removal of the case was not filed until after the trial had commenced.

"She is, therefore, not entitled to have the case removed from this court, and her motion to that effect is refused."

On the 9th of March, 1880, a transcript of the record was filed by Mrs. Carson in the Circuit Court of the United States, and on the 10th of December, 1881, the cause came up for hearing in that court on a motion to remand. At this time affidavits were filed showing clearly that Mrs. Carson, in May or June, 1877, changed her citizenship from New York to Massachusetts, and that she had not from that time resided in New York or represented that State as her home. The answer was drawn by her counsel and her domicil in New York stated by inadvertence without her knowledge. As soon as the answer was seen by her she called attention to the mistake which had been made in this particular. The court, upon consideration of the record and the affidavits, granted the motion to remand, on the ground that, as the petition had not been filed in the State court until after answer, and after the master had under the order of reference proceeded to take testimony, it was too late, as the trial had been begun. From this order an appeal was taken, which is one of the cases now under consideration.

Before the motion to remand was decided in the Circuit Court the State court proceeded with the suit, and on the 30th of August, 1880, a decision was rendered in favor of Mrs. Carson. An appeal was thereupon taken to the Supreme Court, where the judgment of the Common Pleas was reversed, on the 16th of July, 1881, and the cause remanded for further proceedings. Afterwards, on the 9th of September, 1881, a decree was rendered in the Common Pleas against Mrs. Car-

son, from which she appealed on the ground, among others, that because of her petition for removal all rightful jurisdiction of the Court of Common Pleas ceased, and its proceedings thereafter were null and void. Afterwards the Supreme Court affirmed the decree, and in so doing sustained the jurisdiction of the Common Pleas, giving its reasons as follows:

" The facts stated in this petition were, perhaps, sufficient to entitle the petitioner to the order had the petition been filed within proper time, and had the facts stated been sustained by the record as a whole, but the petition broke down at both of these points. It was not filed as required by the act of Congress (1875) at or before the term at which the suit could have been tried; nor did it appear upon the face of the record that the citizenship of Mrs. Carson was in Massachusetts. True, this fact was stated in the petition, but her answer distinctly stated that she was a citizen of New York. Thus the record on its face failed to show the important fact required for removal. *Meyer* v. *Construction Co.*, 100 U. S. 457. Hence, Judge Pressley had no other alternative but to dismiss the petition upon both of the grounds mentioned."

From this decree of affirmance a writ of error has been taken to this court, which presents the other of the two cases now before us.

In our opinion the State court erred in retaining jurisdiction of the suit after the petition for removal was presented, and the Circuit Court in remanding it after it had been docketed there. The record presents but a single controversy in the suit, and that between the plaintiffs and Mrs. Carson as to the priority of her lien. This is conceded. In this controversy all the other defendants may properly be arranged on the same side with the plaintiffs, and thus leave Mrs. Carson at liberty to apply for a removal without joining the others with her. *Removal Cases*, 100 U. S. 457. So far there is no dispute, but the objections to the removal are:

1. That upon the face of the record, as the case stood in the State court, after the petition for removal was presented, Mrs. Carson appeared as a citizen of the same State with some of those on the other side of the controversy; and,

2. That the petition was not in time, because it was not presented " before or at the term at which said cause could be first tried, and before the trial thereof."

1. As to the citizenship. In *Stone* v. *South Carolina*, 117 U. S. 430, it was said, following the former cases on the subject, that a State court is not bound to surrender its jurisdiction until a case has been made which, on its face, shows that the petitioner for removal has a right to the transfer, but it was also said that " all issues of fact made upon the petition for removal must be tried in the Circuit Court." The State court is only at liberty to inquire whether, on the face of the record, a case has been made which requires it to proceed no further.

In the present case the petition stated, in positive terms, that Mrs. Carson was, at the beginning of the suit, and still continued to be, a citizen of Massachusetts. With that fact established, the necessary citizenship for a removal existed. Whether it was a fact or not, could, under the ruling in *Stone* v. *South Carolina*, only be tried in the Circuit Court, unless the statement in the answer filed on behalf of Mrs. Carson estopped her from denying her citizenship in New York. The record of the former suit, which is referred to in the opinion of the Common Pleas judge, we put entirely out of this branch of the case, because the statements there related to a time long anterior to that in which, according to the affidavit, the change of her citizenship occurred. At most it was only evidence, and had nothing to do with the " face of the record." Neither can we look on the statement in the answer as to her domicil, signed by her counsel only, and not under oath, which was filed some days before her petition for removal was presented, as estopping her from asserting the truth. The affidavits on that subject, filed in the Circuit Court, show how the mistake arose, and that the statement was promptly denied by Mrs. Carson as soon as it was brought to her attention. Upon the hearing of the motion to remand in the Circuit Court, there was a full argument by McCrady & Son for the complainants, and by Mr. Young for Mrs. Carson, and the evidence which was submitted, and which was uncontradicted,

sufficiently established a change of citizenship from New York to Massachusetts as early as the middle of 1877, and long before this suit was brought.

2. As to the time. The record is silent as to the manner in which Mrs. Carson was brought into court. The complaint could not have been filed before October 15, 1879, because that is the date of its verification. The evidence establishes the fact beyond question that Mrs. Carson was not in South Carolina between October 15 and December 16, 1879. Consequently she could not have been served personally with process in the State between those days. By the statutes of South Carolina the terms of the Common Pleas of Charleston County began on the second Monday of February, June, and November in each year. The second Monday of November, 1879, fell on the 10th of the month. Consequently, there were only twenty-five days between the 15th of October and the beginning of the November term of the court for that year. By the Code of Practice of South Carolina, Mrs. Carson, if she had been served personally with process on the 15th of October, could not have been required to answer before November 4th, and if by publication, as she might have been, not before December 16th. A section of the Code, § 278, as amended, provides : " At any time after issue and at least fourteen days before court, the plaintiff shall file in the clerk's office the summons and complaint in the cause, endorsing thereon the nature of the issue and the number of the docket upon which the same shall be placed ; and if the plaintiff fail to do so, the defendant, seven days before the court, may file copies of said papers, with like endorsement, and the clerk shall thereupon place said cause upon its appropriate docket, and it shall stand for trial without any further notice of trial or notice of issue."

The stipulation of December 16, 1879, amounted to a waiver of all default previous to that date, and put the parties in no worse condition than they would have been if Mrs. Carson had filed her answer and put the case at issue at rules. Certainly, we are not to presume, on the face of this record, that she could have been forced to trial at the November term. Had

she answered on the 4th of November, which was the earliest day she could have been required to do so, there would not have been fourteen days between that and the term, and so, under the Code of Practice, the case could not have been tried until the February term without her consent; and the same would be true if she had put in her answer on the 16th December, which is probably the day it was really due. Her petition was presented at the February term, and consequently it was "at the term at which the cause could be first tried," according to the meaning of that phrase in the act of 1875, as it has been construed. *Babbitt* v. *Clark*, 103 U. S. 606; *Pullman Palace Car Co.* v. *Speck*, 113 U. S. 84.

It remains only to consider whether the petition was presented before a trial was begun. The stipulation was not to send the case to the master for "trial," but "to take testimony and report the same." In its effect, this was nothing more than an agreement for the appointment of an examiner before whom the testimony in the suit, which was in its nature a suit in equity, could be taken. The master had no authority to find either the facts or the law. His duty was to take and write out the testimony to be reported to the court for use on the trial when it should be begun.

We conclude, therefore, that the suit was removable, and that the petition therefor was presented in time.

The judgment of the Supreme Court of South Carolina is

*Reversed and the cause remanded, with directions that it be sent to the Court of Common Pleas of Charleston County for removal to the Circuit Court, in accordance with the prayer of the petition for that purpose, and the order of the Circuit Court remanding the suit is reversed, and that court is directed to take jurisdiction and proceed to a final determination of the matter in controversy.*

Mr. JUSTICE BLATCHFORD took no part in the decision of these cases.