## DUNHAM v. CARSON.

1. APPEAL—MATTERS INVOLVED.—Where the Circuit Judge sustains a plea in bar, and dismisses the complaint on that ground, and does not pass upon any other question, this court cannot consider and decide issues involving the merits urged by respondents in support of the result of the Circuit judgment.

2. U. S. COURT—DECREE AT CHAMBERS.—It does not seem that a decree in an equity cause in the United States Circuit Court, finally determining the merits, could be rendered at chambers; but certainly the courts cannot presume that a decree at chambers in such case was granted after hearing and considering the merits.

3. DISCONTINUANCE—SUBSEQUENT ACTION.—A case having been moved from the State court to the United States Circuit Court before the cause was ready for trial, and no proceedings had in the latter court until order passed by the judge of that court, on plaintiff's motion, "that upon payment of the costs incurred to date, this cause does stand dismissed, and that the clerk of this court is hereby directed to enter such discontinuance upon payment of said costs," the order was not such a final determination of the questions there involved as would be a bar to another action between the same parties, or their privies, for the same purpose.

4. REMOVAL OF CAUSES—JURISDICTION.—Where a cause is properly removable from the State courts to the United States Court, the filing of the required petition and bond under the act of Congress, deprives the State court of any further jurisdiction of the case; and any step taken thereafter in the State court is without authority.

5. DISCONTINUANCE—SUBSEQUENT ACTION.—The fact that plaintiffs noticed their motion for discontinuance of their action "without prejudice," and

prepared an order to that effect, which was signed with the quoted words erased, did not make the order of discontinuance a decree on the merits.

6. IBID.—IBID.—Where a cause has not progressed so far as to entitle the defendant to a decree against the plaintiffs, the plaintiffs have a clear legal right to an order of discontinuance, and such order will not operate as a bar to a subsequent action.

Before IZLAR, J., Charleston, November, 1890.

This was an action by C. T. Dunham against Caroline Carson, commenced on August 11, 1886, in Berkeley County, and afterwards transferred to Charleston County for trial. The opinion sufficiently states the case; but if a full history is desired of all the litigation which has grown out of the mortgages on Dean Hall plantation, it will be found by consulting the following cases in their order: *Robertson* v. *Carson,* 19 Wall., 94; *McBurney* v. *Carson,* 99 U. S., 567; *Hyatt* v. *McBurney,* 15 S. C., 393; 17 *Id.,* 143; 18 *Id.,* 199; *Carson* v. *Hyatt,* 118 U. S., 279; *Carson* v. *Dunham,* 121 *Id.,* 421; *Carson* v. *Dunham,* 149 Mass., 52.

The Circuit decree, omitting its statement, was as follows:

In the view we take of the case, the validity of the defence depends upon two questions: (1) Was the decree of Judge Bond, in the case of Hyatt *v.* Carson, an adjudication upon the merits, and consequently a "final determination," of the controversy? And (2) if so, is the present plaintiff estopped thereby?

In *Durant* v. *Essex Co.,* 7 Wall., 109, the court says: "The decree dismissing the bill in the former suit in the Circuit Court of the United States being absolute in its terms, was an adjudication of the merits of the controversy, and constitutes a bar to any further litigation of the same subject between the same parties—a decree of that kind, unless made because of some defect in the pleadings, or for want of jurisdiction, or because the complainant has an adequate remedy at law, or upon some other ground which does not go to the merits, is a final determination, where words of qualification, such as without prejudice, or other terms indicating a right or privilege to take further legal proceedings on the subject, do not accompany the

decree, it is presumed to be rendered on the merits." This doctrine was recognized and followed in *Lyon* v. *Perin, &c., Company*, 125 U. S., 702, decided in 1887, and by the Supreme Court of South Carolina, *Dunsford* v. *Brown*, 23 S. C., 333.

This presumption is strengthened in the case we are considering, from the fact that the Circuit Court was "directed to take jurisdiction and proceed to a final determination of the matter in controversy." Judge Bond was advised of this direction of the Supreme Court of the United States, and had the order contained the qualifying words, *"without prejudice,"* it would not have been that "final adjudication of the controversy" which the Circuit Court was directed to make by the Supreme Court. Mr. Justice Field, in *Durant* v. *Essex, supra*, says: "Accordingly, it is the general practice in this country and in England, when a bill in equity is dismissed without a consideration of the merits, for the court to express in its decree that the dismissal is 'without prejudice.' These words having been omitted from the decree, it is presumed to have been rendered on the merits, as the case does not fall within any of the recognized exceptions to the settled rule." In *Bigelow* v. *Winsor*, 1 Gray (Mass.), 299, the court says: "Sometimes, indeed, a party plaintiff in equity who, because he is not prepared with the proof, or for other reasons, desires not to go into a hearing, but rather to have the bill dismissed, in the nature of a discontinuance or non-suit in an action at law, may be allowed to do so; but we believe the uniform practice in such cases is to enter, 'dismissed without prejudice.'" As we understand the court in this case, if the favor is granted of allowing the plaintiff to dismiss his bill, "in the nature of a discontinuance or a non-suit in an action at law," the uniform practice is to have this fact appear by inserting in the order the words, "without prejudice." Why this uniform practice? The reason is evident, for, as we have already seen, the settled rule is, that when words of qualification, such as "without prejudice," or other terms indicating a right or privilege to take further legal proceedings on the subject, do not accompany the decree, it is presumed to be rendered on the merits.

But it is insisted by the plaintiff herein that the decree of

Judge Bond was for discontinuance made on a bill and answer, before evidence taken and before a hearing on the merits, and even though it was between the same parties, can only be pleaded in bar to a new bill for the same subject matter, when it appears that the dismissal was decreed or ordered after a hearing on the merits. The case of *Badger* v. *Badger*, 1 Clifford, 237, cited as authority for this position, did hold that when a cause in equity was set down for hearing, and before any of the testimony taken was published, the complainant moved to dismiss his bill, and no objection being made thereto, the motion was granted, and the bill dismissed, without any hearing upon the merits, the record of the former suit and decree was no bar to the bill of complainant. By an examination of the facts in *Badger* v. *Badger, supra* (239), it will be seen that that case differed in several material points from the case of Hyatt *v.* Carson. The rule contended for in *Badger v. Badger* was "that a suitor, after testimony has been taken and the cause is ready for a hearing, has no right as of course to have his bill dismissed, so that such dismissal shall operate only as a non-suit at law." Judge Clifford says that, from the facts admitted, it appeared, "that before the cause was set down for hearing, and before any of the testimony taken was published, the complainant moved to dismiss his bill, and no objection being made thereto, the motion was granted, and the bill of complaint was accordingly dismissed without any hearing upon the merits. On this state of the case, I am of the opinion that the replication is a good answer to the plea, and that the former suit and decree is no bar to the bill of complaint."

But in Hyatt *v.* Carson, the parties being at issue in the State court as to all the material allegations of the complaint, the case was referred to the master, who was attended by the attorneys for the plaintiff and said defendant, and had finished taking the testimony offered by the plaintiffs, and that offered by the defendant also, when said defendant filed a petition, praying removal of the cause to the Circuit Court of the United States (*Hyatt* v. *McBurney*, 18 S. C., 201). This motion was refused by the Circuit Judge of the State court, who afterwards filed a decree involving the merits. On appeal to the State

Supreme Court, the decree of the Circuit Judge was affirmed. The defendant Carson appealed to the Supreme Court of the United States from the judgment of the Supreme Court of South Carolina. Her appeal was sustained, the judgment of the Supreme Court of South Carolina was reversed, and the cause removed to the Circuit Court of the United States, with the direction that said court "take jurisdiction and proceed to a final determination of the cause."

After the case is docketed for a hearing in the Circuit Court of the United States, and all the testimony adduced by the plaintiffs in support of their case is in, the plaintiffs give notice that they will move for leave to enter an order of discontinuance "without prejudice." An order is afterwards made on this motion, to the effect "that upon the payment of the costs incurred to date, said cause stand dismissed," with the qualifying words, "without prejudice," omitted. Under these circumstances, it appears to us that said decree is not in the nature of a discontinuance or a non-suit in an action at law, but, on the contrary, it was an adjudication upon the merits of the controversy, and was so intended by Judge Bond when he made said decree. This decree, therefore, constitutes a bar to any further litigation of the same subject matter between the same parties or their privies.

We come next to consider the second proposition; is the present plaintiff estopped thereby? The plaintiff herein claims now to be the assignee for value of the bond and mortgage formerly held by Hyatt, and which was the subject matter of the controversy in the case of Hyatt *v.* Carson. It seems that, after the decree of dismissal was made in the case of Hyatt *v.* Carson, the Hyatts assigned the said bond and mortgage to Dunham, the present plaintiff. Whether this assignment was *bona fide* and for value, or whether it was colorable only, and made for the purpose of preventing a removal of the cause to the Circuit Court of the United States, we do not think it necessary to discuss now. For the present, we shall treat it as made *bona fide* and for value.

In *Hughes* v. *United States*, 4 Wall, 232, it was held: "In order that a judgment may constitute a bar to another suit, it

35—37

must be rendered in a proceeding between the same parties or their privies, and the point of controversy must be the same in both cases, and must be determined upon the merits," and in *Walden* v. *Bodley*, 14 Pet., 156, it was said by the court: "A decree, dismissing a bill, generally may be set up in bar of a second bill having the same object in view, but, when the bill has been dismissed, on the ground that the court had no jurisdiction, which shows that the merits were not heard, the dismissal is not a bar to the second suit. Now, we have seen that the dismissal in Hyatt *v.* Carson was general and absolute in its terms, and was an adjudication of the merits of that controversy. We have also seen that the present bill has the same object in view, or that the point of the controversy is the same as that in Hyatt *v.* Carson. But one essential element is wanting to bring the case within the settled rule, namely, the identity of the parties or their privies.

The present suit is clearly not between the same parties, so that the question is narrowed down to the one point: Is Dunham, the present plaintiff, a privy of the Hyatts, the plaintiffs in the former action? That the assignee of a bond and mortgage stands in relation of a privy to the assignor, we hardly think there can be a doubt. If this were not so, the assignee, in cases like the present, would acquire a higher right than was in the party from whom he took. To use the language found in the argument of one of the learned counsel for the defendant, it would be a waste of time to insist on such a proposition as that the assignee of a bond had a higher right in law or equity than his assignor, or that he who purchases *pendente lite* was entitled to higher consideration than the party in the suit from whom he acquired, whatever that claim might be in the one from whom it was so acquired. This proposition seems to be conceded, as it was not contested or even alluded to in argument by the learned counsel for the plaintiff. Under the view we have taken, we must hold, that the decree in Hyatt *v.* Carson constitutes a bar to the present suit.

It is, therefore, ordered and adjudged, that the complaint be dismissed, with costs to the defendant to be paid by the plaintiff.

Plaintiff appealed.

*Messrs. Mitchell & Smith,* for appellant.

*Messrs. A. G. Magrath* and *H. E. Young,* contra.

September 29, 1892. The opinion of the court was delivered by

MR. CHIEF JUSTICE MCIVER. The single question presented by this appeal is, whether the Circuit Judge erred in sustaining the defendant's plea in bar, and rendering judgment dismissing the complaint. For a proper understanding of this question, a brief statement will be necessary. It seems that on the 15th of October, 1879, the executors of one Hyatt commenced an action, in the Court of Common Pleas for Charleston County, in this State, against William McBurney and others, members of the firm of Hyatt, McBurney & Co., and the defendant herein, Caroline Carson, for the purpose of foreclosing a mortgage on certain real estate, known as "Dean Hall," in which an order was granted, referring the case to Master Clancy, "to take testimony and report the same." In pursuance of this order, the master, on the 27th of February, 1880, made his report of the testimony taken by him, in which he stated that at the close of the plaintiff's case, on the 16th of February, 1880, counsel for Mrs. Carson notified the master that he had, on that day, "filed a petition in the clerk's office of the Court of Common Pleas for Charleston County, in behalf of Caroline Carson, the defendant, praying in her behalf the removal of this case into the United States Court, and that it was his purpose not to proceed with this cause before the master." Thereupon plaintiff's counsel moved that the master file his report of the testimony taken in the cause, as directed by the order of reference, which was done.

On the 10th of March, 1880, counsel for Mrs. Carson moved, in the Court of Common Pleas, to remove the cause in accordance with the petition, which motion was refused, and that court proceeded to hear and determine the case; and having rendered judgment for foreclosure, the case was carried by appeal to the Supreme Court of the State, where final judgment

was rendered on the 28th of October, 1882, affirming the judgment of the Court of Common Pleas. See *Hyatt* v. *McBurney,* 18 S. C., 199. In the meantime, the transcript of the record having been filed in the Circuit Court of the United States on the 9th of March, 1880, counsel for plaintiffs, at the November term of that court for the year 1881, moved before his honor, Judge Bond, the United States Circuit Judge, to remand the case to the State court, which motion was granted by the following order: "It is ordered, adjudged, and decreed, that the petition of Caroline Carson not having been filed in the said court until after the answer had been filed in the said court, and the master, under an order of reference, had proceeded to take testimony in the cause, the filing of the said petition was too late, the trial of the said cause, in the judgment of the court, having been begun. It is further ordered and decreed, that the said cause is hereby remanded to the court from which it is said to be removed." From that order Mrs. Carson appealed, and the same was heard in connection with the writ of error in the same case to the Supreme Court of the State, by the Supreme Court of the United States, and on the 10th of May, 1886, judgment was rendered, reversing the judgment of the Supreme Court of the State, as well as the order of the Circuit Court of the United States, remanding the case to the State court, as above set out, and directing that said Circuit Court "take jurisdiction and proceed to a final determination of the matter in controversy." See *Carson* v. *Hyatt,* 118 U. S., 279.

Soon after the case was thus removed to the Circuit Court of the United States, the plaintiffs gave notice to the defendants, that they would move before his honor, Judge Bond, at chambers, for leave to enter an order of discontinuance, without prejudice, upon the payment of the costs incurred, to be taxed by the clerk of said court, and, in pursuance of this notice, Judge Bond, on the 10th of July, 1886, granted an order, upon the motion of the plaintiffs' attorneys : "That, upon the payment of the costs incurred to date, this cause does stand dismissed, and that the clerk of this court is hereby directed to enter such discontinuance, upon payment of said costs. And it is further ordered, that the clerk of this court do tax the

costs in the same.'' The order, as presented by the counsel for plaintiffs, contained the words, ''without prejudice,'' between the word ''dismissed'' and the word ''and,'' but, before signing the order, Judge Bond erased the words, ''without prejudice,'' by drawing his pen through them, and thus the order, as signed, reads as in the above copy. The costs in the cause having been duly taxed and paid, the same was at an end.

On the 27th of July, 1886, the said cause having been thus discontinued, and at an end in the United States Circuit Court, the bond and mortgage, upon which said cause was based, was duly assigned to the plaintiff in the present case, who thereupon commenced the present action on the 11th of August, 1886, in the Court of Common Pleas for Berkeley County, in this State, against the said Caroline Carson, for the foreclosure of said mortgage. The defendant, Caroline Carson, having appeared, immediately filed a petition for the removal of this case to the Circuit Court of the United States, which court declined to take jurisdiction, and granted an order remanding the case to the State court. From this order, the defendant herein, Caroline Carson, appealed to the Supreme Court of the United States, which court rendered judgment affirming the said order, and remanding the case to the Court of Common Pleas for Berkeley County, when it was heard by his honor, Judge Izlar, who rendered judgment sustaining the plea in bar, set up in defendant's answer, based upon the order of 10th of July, 1886, granted by Judge Bond at chambers, above copied; and dismissed the complaint with costs.

From this judgment plaintiff appeals, upon the several grounds set out in the record, which, however, really present the single question whether the said order of Judge Bond is a bar to this action. The defendant, according to the proper practice, has given notice that she will ask this court to sustain the judgment of Judge Izlar, upon other grounds besides those mentioned in the decree, which are likewise set out in the record. But as these additional grounds raise questions not considered or decided by the Circuit Judge, they present nothing for this court to review, and hence need not be

stated here.    The Circuit Judge having sustained the plea in
bar, the judgment dismissing the complaint followed necessa-
rily, without considering any question on the merits, and hence
the only point before this court for review is that raised by the
plea in bar.    It is like a case in which a demurrer has been
sustained upon the ground that the complaint does not state
facts sufficient to constitute a cause of action; and surely, upon
an appeal from an order sustaining such a demurrer, this court
could not be called upon to decide the merits of the case upon
questions raised by the answer which had not been considered
or decided by the Circuit Court.

We must, therefore, confine our inquiry to the sole question,
whether there was error in sustaining the plea in bar, which
rests entirely upon the order or decree, as it is called, of Judge
Bond, of the 10th of July, 1886.    This, in our judgment, de-
pends upon the inquiry whether such order or decree can be
regarded as a final determination, after hearing, of the merits
of the controversy involved in the former case.    We do not
think it can be so regarded, first, because such order was
granted *at chambers*, where, as we understand it, a case
could not be heard upon the merits.    But waiving this,
we think it clear from an inspection of the terms of the order
and the record in the case, that it was an order granted before
hearing, simply permitting the plaintiffs, on their own
motion, to discontinue their action upon the payment of
the costs incurred up to that time, and that it cannot be
regarded as a final determination of the questions therein in-
volved, in such a sense as would bar another action brought by
the same parties, or their privies, for the same purpose.

What was the condition of the case on the 16th of February,
1880, when, as has been determined by the tribunal of last re-
sort, it was removed to the Circuit Court of the United States?
It certainly had not then been heard, and it was not then in a
condition to be heard; for all that had been done up to that
time was to refer the case to the master, *not* for the purpose of
hearing and determining the issues in the action, but simply
"to take testimony and report the same;" and the master was
then engaged in the performance of that duty which, as the

record shows, was not then completed. For, although the master did, subsequent to the filing of the petition for removal, to wit, on the 27th of February, 1880, undertake to make a report to the State court of the testimony which he had taken, yet that must now be regarded as a nullity, for the rule is well settled, that upon the filing of the required petition and bond, in a case which may be removed under the provisions of the act of Congress, the State court at once loses its jurisdiction, and has no authority to proceed further. *Marshall* v. *Holmes*, 141 U. S., 595; *Pelzer Manuf. Company* v. *The Sun Fire Office*, 36 S. C., 213. Hence every step taken in the case after the 16th of February, 1880, by the State court, or by its officer, the master, was taken without authority, as that court on that day lost all jurisdiction of the case.

When, therefore, by the operation of the rule above stated, the case was, on the 16th of February, 1880, removed to the Circuit Court of the United States, it stood upon the docket of that court precisely in the condition in which it was when it was taken out of the State court. No trial had been had, and the trial had not even commenced; and, according to our view, it was not then in a condition to be tried, for no report of the testimony had been made. But it is sufficient for our purpose to say that no trial had commenced. This is rendered absolutely certain by what is said by Waite, C. J., in delivering the opinion of the Supreme Court of the United States affirming the right of removal. See *Carson* v. *Hyatt*, 118 U. S., where, at page 289, we find the following language: "It remains only to consider whether the petition was presented before a trial was begun. The stipulation was not to send the case to the master for 'trial,' but 'to take testimony and report the same.' In its effect, this was nothing more than an agreement for the appointment of an examiner, before whom the testimony in the suit, which was in its nature a suit in equity, could be taken. The master had no authority to find either the facts or the law. His duty was to take and write out the testimony to be reported to the court for use on the trial when it should be begun."

If, then, the trial had not commenced when the case was restored to the docket of the Circuit Court of the United States,

when did it commence? It does not appear that any steps whatever were taken in the Circuit Court of the United States after the case was thus restored to the docket of that court, until the notice of the motion for the order of discontinuance was given, to wit, on the 2d of July, 1886, which notice, addressed to the counsel for Mrs. Caroline Carson, was in the following words: "Please take notice that we discontinue the above entitled cause, and will move before his honor, Judge Bond, at chambers, at Baltimore, Md., on the 8th day of July next, for leave to enter an order of discontinuance, without prejudice, upon the payment of the costs incurred to date, to be taxed by the clerk of this court," followed by the order of Judge Bond, of the 10th of July, 1886, hereinabove set out. So that the practical question is, whether this order can be regarded as a final determination of the controversy, after a hearing upon the merits, in such a sense as will render it a bar to the present action. It will be observed that the order was granted upon the motion of the plaintiffs' attorneys, and does not purport to have been made after hearing and considering the merits. While it is true that order does contain these words, "this cause does stand dismissed," yet those words are followed immediately by these, "and that the clerk of this court is hereby directed to enter *such discontinuance,*" &c. (italics ours); and this, we think, shows that the order amounted to nothing more than a voluntary discontinuance of the action by the plaintiffs.

The fact, that Judge Bond struck out the words, "without prejudice," before signing the order, as presented to him, cannot affect the question. What was his reason for doing so, we are not informed. Whether he thought they were unnecessary, or whether he intended thereby to prevent another action from being brought, is wholly immaterial. He certainly had no power to prejudice the right of this plaintiff to bring another action, for that was a question which could only be properly determined when it arose. It may be possible that he could have refused to grant the order, except upon the condition that no other action should be brought (though as to that, we express no opinion), but it is sufficient to say, that no

such condition can be found in the order; the only condition imposed being the payment of the costs, which has been complied with. If, then, the case was in such a condition as would enable the plaintiffs to discontinue their action without prejudice to their right to bring another action for the same purpose, the fact, that the order allowing the discontinuance upon the payment of costs, which should always be imposed, the omission of the words, "without prejudice," cannot, in our judgment, affect the question.

The true rule upon this subject was stated by that eminent jurist, Harper, Ch., in *Bunk* v. *Rose*, 1 Rich. Eq., 294, in these words: "The general rule is, as contended for, that the plaintiff, at any time before the decree, perhaps before the hearing, may dismiss his bill as of course, upon the payment of costs; but certainly it cannot be said that the rule is without exception. The exception, stated in general terms, is, that it is within the discretion of the court to refuse him permission to do so, if the dismissal would work a prejudice to the other parties; and I gather from the cases compared with each other, that it is not regarded as such prejudice to a defendant, that the complainant dismissing his own bill, may, at his pleasure, harass him by filing another bill for the same matter. But whenever, in the progress of a cause, a defendant entitles himself to a decree, either against the complainant or against a co-defendant, and the dismissal would put him to the expense and trouble of bringing a new suit and making his proofs anew, such dismissal will not be permitted." It was upon this principle that the previous case of *Bethia* v. *McKay*, Cheves Eq., 93, was decided, overruling the case of *Bossard* v. *Lester*, 2 McCord Ch., 419. There the bill was filed by certain distributees of Flora McKay against the administrators and the other distributees, amongst other things, for partition and account of her estate. After the account was taken and reported, to which no exceptions were filed, in which it appeared that there was a balance due the administrators by the plaintiffs, a motion was made by the plaintiffs to dismiss so much of their bill as claimed an account from the administrators of Flora McKay, which was refused, upon the ground that the

36—37

administrators, having shown themselves entitled to a decree against the plaintiffs, under an accounting taken at the instance of plaintiffs, could not be deprived of their right to such decree by allowing the plaintiffs to dismiss their bill.

It will be observed, that the rule, as stated by Harper, Ch., *supra*, necessarily implies the right of a plaintiff, after dismissing his bill, to bring a new action, and, what is more, "that it is not regarded as such prejudice to a defendant, that the complainant, dismissing his own bill, may, at his pleasure, harass him by filing another bill for the same matter;" but it is only where a defendant has shown himself entitled to a decree against the complainant, as in *Bethia* v. *McKay*, or against a co-defendant, and the dismissal would put him to the expense and trouble of bringing a new suit to recover what he has already shown himself entitled to. It is very obvious, therefore, that this case does not fall within the exception to the rule, as stated by Chan. Harper, for Mrs. Carson has certainly never shown herself entitled to a decree against the plaintiffs in the suit which was discontinued for any amount whatever, and all the prejudice that she can complain of is being harassed with another suit, which is expressly declared not to be sufficient to warrant a refusal of plaintiffs' motion to discontinue. It seems to us, therefore, that the plaintiffs in the former action had a clear legal right to discontinue the same, without prejudice to their right, or that of their assignee, to bring a new action for the same purpose,.and that the order of Judge Bond cannot operate as a bar to the present action.[1]

It is contended, however, that where the order, allowing the discontinuance, does not contain the words, "without prejudice," or their equivalent, the presumption is that the order was granted after hearing and considering the merits. Even conceding this to be so, where the order is passed by a tribunal competent to hear and decide the merits (though we are not to be considered as making such a concession), yet it certainly cannot be so where, as in this case, the order was granted *at chambers*, where the case could not be

---

[1] See *Latimer* v. *Sullivan, ante,* 120.

heard on the merits.   The cases of *Durant* v. *Essex Company*, 7
Wall., 107, and *Lyon* v. *Perin, &c., Company*, 125 U. S., 698,
relied on by the Circuit Judge, do not appear to us to be deci-
sive.   In the former case the order of dismissal was made, not
at chambers, but by the court, "after testimony was taken on
both sides, and the case heard on its merits and argued by
counsel," and it was in relation *to such an order or decree* that
Mr. Justice Field, in delivering the opinion of the Supreme
Court of the United States, used the language relied upon to
show that where such a decree did not contain the words,
"without prejudice," or other equivalent terms, it would be
presumed that the decree was upon the merits.   That case,
therefore, was very different from this.

So, in *Lyon* v. *Perin,* the decree relied upon as a bar was
rendered by the court, not at chambers, and was in these terms :
"This cause coming on for hearing, and being submitted to the
court upon bill, answer, and replication, and having been duly
considered, the court finds, adjudges, and decrees, *that the equi-
ties are with the defendant;* that the bill of complaint be dis-
missed, and that defendant recover its costs, to be taxed."
That decree, therefore, bore upon its face the evidence that it
was rendered *after a hearing* and *upon a consideration of the
merits*, which were formerly adjudged to be with the defendant.
We can very well understand how *such a decree* would bar an-
other action, unless it contained the words, "without preju-
dice," or other equivalent words, for it shows clearly that the
issues between the parties had been heard and finally deter-
mined; and hence there was no room for any presumption
arising from the absence of the words, "without prejudice."
That case, therefore, is wholly unlike the case now under con-
sideration.

It is true, that, in *Bigelow* v. *Winsor*, 1 Gray, 299, Mr. Jus-
tice Gray, then Chief Justice of Massachusetts, did say : "Some-
times a party plaintiff in equity, who, because he is not pre-
pared with his proofs, or for other reasons, desires not to go
into a hearing, but rather to have his bill dismissed in the
nature of a discontinuance or non-suit in an action at law, may
be allowed to do so; but we believe the uniform practice in

such case is to enter 'dismissed without prejudice.'" But it is very obvious that he did not mean so to *decide*, for he adds: "But it is unnecessary to resort to a mere inference in the present case. The cause was not only at issue and ready for hearing, but was actually heard by the court, and fully presented on both sides, and the decree itself, stating the grounds of the judgment, shows it to be a judgment on the merits." That case, therefore, is manifestly no authority for the ruling in the present case. It is true, that the case of *Foote* v. *Gibbs*, 1 Gray, 412, cited in argument of counsel for respondent, does seem to support his view, that the absence of the words, "without prejudice," does afford a presumption that the decree, relied upon as a bar, was made upon the merits; but it is only necessary to say, that it seems that the decree, relied upon as a bar, in that case, was heard by the court, a tribunal competent to hear and determine the merits, while here the order of dismissal was granted at chambers.

Our own case of *Dunsford* v. *Brown*, 23 S. C., 328, is also relied upon; but that case is clearly not in point, for it will be seen, by reference to the order disposing of the petition for rehearing, that, in the decree, relied upon as a bar, the whole merits had been considered and determined. See *Dunsford* v. *Brown*, 19 S. C., 570–571. As was said by Kent, Ch., in reference to the case in which the language was used, and which, we think, is applicable to the case now under consideration: "The merits of the former case were never discussed, and no opinion of the court has ever been expressed upon them. It is, therefore, not a case within the rule rendering a decree a bar to a new suit. The ground of this defence by plea is, that the matter has already been decided, and there has been no decision on the matter." *Rosse* v. *Rust*, 4 Johns. Ch., 300, where the case of *Brandlyn* v. *Ord*, 1 Atk., 571, is cited as containing the following language of Lord Hardwicke: "That, where the defendant pleads a former suit, he must show it was a *res judicata* or absolute determination of the court, that the plaintiff had no title. A bill, dropped for want of prosecution, is not to be pleaded as a decree of dismission in bar to another bill." See, also, Mitf. Eq. Pl., 238; Story Eq. Pl., § 793.

The judgment of this court is, that the judgment of the Circuit Court be reversed, and that the case be remanded to that court for a hearing on the merits.