THE PEOPLE OF PUERTO RICO, Plaintiff, *v*. HARRY E. HENNEMAN ETC., ET AL., Defendants.

No. 11. Argued December 7, 1942.—Decided December 23, 1942.

*E. T. Fiddler, H. S. McConnell,* and *José G. González* for defendants. *M. Rodríguez Ramos, Acting Attorney General,* and *Miguel Guerra-Mondragón, Rafael Rivera Zayas, Luis Venegas Cortés,* and *Nilita Vientós,* the latter being special attorneys, for The People.

MR. JUSTICE SNYDER delivered the opinion of the court.

This is a petition for removal of an information in the nature of *quo warranto* from this court to the District Court of the United States for Puerto Rico. The information alleges ownership and control of land in violation of certain insular and federal statutes. On petition of defendants therein, a proceeding similar to the instant case was removed, by reason of diversity of citizenship, to the said federal court by order of this court (60 P.R.R. 58). That suit was thereupon voluntarily dismissed in the federal court by the plaintiff, and the present proceeding thereafter instituted in this court.

There is only one difference between this suit and the previous proceeding which need concern us on this petition; namely, lessors of land to one of the defendants, Eastern Sugar Associates, have been made party defendants herein, although they were not so joined in the first proceeding. Consequently, the only new question presented by this petition for removal is whether the joinder of such lessors, who are residents of and domiciled in Puerto Rico, prevents removal in this case. The petitioners contend that it does not on the grounds (a) that the lessors are not indispensable parties to this cause, and (b) that the lessors were fraudulently joined as defendants to prevent removal.

At the threshold of this proceeding we are met with the contention of the petitioners that our function herein is restricted to determining if the formal requisites for such a petition, found in Title 28 U.S.C.A., §72, have been complied with, and that we therefore have no power to pass on the

question of whether the lessors are indispensable parties herein. We therefore examine this contention first.

We have no quarrel with the statement in petitioners' brief that the procedure to be followed on a petition for removal is set forth in *Houlton Sav. Bank* v. *American Laundry Machinery Co.,* 7 F. Supp. 858, at pp. 860, 61, as follows:

". . . The only matter left to the state court to decide, when a petition for removal is filed, is whether, admitting the facts stated in the petition to be true, it appears on the face of the record that the petitioner is entitled to a removal. . .

"The Supreme Court in the case of *Burlington, etc., R. Co.* v. *Dunn,* 122 U. S. 513, said: 'All issues of fact made upon the petition for removal must be tried in the circuit court (now district), but the state court is at liberty to determine for itself whether, on the face of the record, a removal has been effected. . . . *It presents then to the state court a pure question of law; and that is whether, admitting the facts stated in the petition for removal to be true, it appears on the face of the record . . . that the petitioner is entitled to a removal of the suit.* . . . But, even though the state court should refuse to stop proceedings, the petitioning party may enter a copy of the record of that court, as it stood on the filing of his petition, in the circuit [district] court, and have the suit docketed there.' " (Italics ours.)

But there is nothing in that case, nor in *Chas. & Ohio Ry. Co.* v. *Cockrell,* 232 U. S. 146, also cited on this point by the petitioners, which prevents us from considering as true all the facts alleged in the petition and then proceeding to pass on the narrow questions of law raised by this petition in order to determine if the petition should be granted. On the contrary, it is our view that these and other cases to be presently noted establish not only our right but our duty to examine those questions.

In *Chicago R. I. & Pac. Ry.* v. *Dowell,* 229 U. S. 102, the plaintiff sued a railroad company and an engineer for damages for injuries sustained by virtue of alleged negligence of both the railroad company and the engineer. The defendant railroad company, seeking to remove for alleged

diversity of citizenship between it and the plaintiff, alleged a separable controversy. The state court denied the petition. In affirming that judgment the Supreme Court of the United States said at p. 113 that "Whether there was a joint liability or not was a question to be determined upon the averments of the plaintiff's statement of his cause of action, and is a question for the state court to decide."

In *Illinois Central R. R. Co.* v. *Sheegog,* 215 U.S. 308, the plaintiff brought an action for the death of his intestate, an engineer employed by a railroad, alleging improper roadbed and track conditions on the railroad. The plaintiff joined as defendants the B company, which operated the railroad, and the A company, lessor of the railroad properties to the B company. The state court denied the petition for removal filed by the B company on the ground of diversity of citizenship. The Supreme Court of the United States affirmed the judgment in an opinion by Mr. Justice Holmes in which he said at pp. 317, 18:

". . . the question whether a joint liability of lessor and lessee would arise from the acts and omissions of the Illinois Central Railroad Company alone was a question of Kentucky law for it [the state court] to decide, and it appears to us to have decided it."

"＊　　＊　　＊　　＊　　＊　　＊　　＊

". . . whatever may be the precise line drawn by that court hereafter, it stands decided that in Kentucky the facts alleged and proved against the Illinois Central Railroad in this case made its lessor jointly liable as matter of law. This decision we are bound to respect."

In *Morgan* v. *Kroger Grocery and Baking Co.,* 96 Fed. (2d) 470 (C.C.A. 8th, 1938), the plaintiff brought a personal injury suit in a state court against the City of St. Louis and the defendant corporation. The defendant corporation petitioned for removal to the United States District Court, alleging the existence of a separable controversy as to it. The state court refused to remove, whereupon the defendant corporation docketed the case in the federal court, and that

court granted an injunction against the plaintiff, restraining her from prosecuting the action in the state court. The Circuit Court of Appeals reversed the United States District Court, directing it to remand the case to the state court. The Circuit Court said at pages, 472, 73:

". . . However, the state court is not bound to surrender jurisdiction unless the petition for removal shows that the cause is a removable one. *Stone* v. *South Carolina*, 117 U.S. 430, 6 S.Ct. 799, 29 L.Ed. 962; *Carson* v. *Hyatt*, 118 U.S. 279, 6 S.Ct. 1050, 30 L.Ed. 167; *Madisonville Traction Co.* v. *Mining Co.*, 196 U.S. 239, 25 S.Ct. 251, 49 L.Ed. 462; *Chesapeake & O. Ry. Co.* v. *Cockrell*, 232 U.S., 146, 34 S.Ct. 278, 58 L.Ed. 544; *Illinois C. R. Co.* v. *Sheegog*, 215 U.S. 308, 30 S.Ct. 101, 54 L.Ed. 208; *Gulf Refining Co.* v. *Morgan*, 4 Cir., 61 F(2d) 80; *Moulton* v. *National Farmers' Bank, D.C.*, 27 F. (2d) 403. If a prima facie case for removal is not shown by the record, the state court may refuse to remove. *Where the petition for removal presents only a question of law, the state court may act upon it, but if it presents any question of fact, that must be determined by the federal court upon motion to remand.* *Farmers' Bank & Trust Co.* v. *Atchison, T. & S. F. Ry. Co.*, 8 Cir., 25 F.(2d) 23; *Boyle* v. *Chicago, R. I. & P. Ry. Co.*, 8 Cir., 42 F. (2d) 633." (Italics ours.)

See also *Lake* v. *Texas News Co.*, 51 F. (2d) 862; *Hoffman* v. *Metz*, 31 F. Supp. 204, 206 (1940).

State courts have held to the same effect. *State* v. *Mosman*, 133 S. W. 38 (Mo. 1910); *Goodman* v. *Grace Iron & Steel Corporation*, 13 A. (2d) 228 (N. J. 1940); *Miles* v. *Layton*, 193 A. 567 (Del. 1937).

██ We therefore proceed to pass as a matter of law on this petition for removal in which "indispensable parties only should be considered . . . all other parties may be . . . disregarded, if their presence would oust or restrict the right . . ." of removal. [*Fienup* v. *Kleinman*, 5 F. (2d) 137, 40 (C.C.A. 8th, 1925).] The parties herein unite in asserting that the *Fienup* case correctly defines an indispensable party at p. 140 as follows:

"An indispensable party is one who has such an interest in the subject-matter of the controversy that a final decree cannot be rendered between the other parties to the suit, without radically and injuriously affecting his interest, or without leaving the controversy in such a situation that its final determination may be inconsistent with equity and good conscience. . . ."

*New Jersey Central Railroad Co.* v. *Mills,* 113 U. S. 249, *Egyptian Novaculite Co.* v. *Stevenson,* 8 F. (2d) 576 (C.C.A. 8th, 1925), *Iberia Petroleum Corporation* v. *Acadian Production Corp.,* 54 F. Supp. 995 (1940), *Murphy* v. *Johnson,* 49 F. (2d) 410 (1931), *Sharpe* v. *Landowners Oil Ass'n,* 92 S. W. (2d) 435 (Tex. 1936), and *De Grazier* v. *Panell Oil Corporation,* 109 S. W. (2d) 1109 (Tex. 1937) are illustrative of the host of cases which apply the test laid down in the *Fienup* case.

See also §§63 and 66 of the Code of Civil Procedure of Puerto Rico, as compared with Rules 19 and 20 of the Federal Rules of Civil Procedure; *Ramis et al.* v. *Prats et al.,* 32 P.R.R. 811; *Carlo* v. *Ferrer et al.,* 27 P.R.R. 203, 212. Cf. *People* v. *Plata Sugar Co.,* 58 P.R.R. 912; *People* v. *Fajardo Sugar Co.,* 31 P.R.R. 851.

In the instant case, the petitioners summarize their contention that the lessors are not indispensable parties herein as follows: "The only thing the lessors did was to contract with these petitioners. As to them the only question that arises is whether they contracted with persons who had capacity to contract or not. They have nothing to do with the circumstances which determine if this lack of capacity exists or not. It may be that they have an indirect interest in the result of the proceedings; but this does not make them indispensable parties to the controversy between the People and these petitioners."

It is not necessary for us to determine if this contention of the petitioners would prevail if this were an ordinary *quo warranto* proceeding and nothing more—if, for example, this were a *quo warranto* proceeding to dissolve a corporation

organized to manufacture clothing which had leased and was operating a quarry.

But here, in addition to the ordinary negative and prohibitory sanctions provided for cases such as the above example, §1 of Act No. 47, Laws of Puerto Rico, 1935, (Special Session) provides, for cases of the type herein, the affirmative provision that "When any corporation . . . is unlawfully holding, *under any title,* real estate in Puerto Rico, The People of Puerto Rico may, at its option, *through the same proceedings,* institute in its behalf the confiscation of such property, or the alienation thereof at public auction, within a term of not more than six months . . . " (Italics ours.)

Section 2 of Act No. 47, as amended by Act No. 183, Laws of Puerto Rico, 1941, provides that the judgment in such a case shall decree "the nullity of all acts done and contracts made by the defendant corporation or entity; and in addition, said judgment shall decree the cancellation of every entry or registration made by the said corporations in the public registries of Puerto Rico; and when the decree of nullity *affects real property* and The People of Puerto Rico has chosen to confiscate it or orders it sold at public auction, *the final judgment shall fix the reasonable price* to be paid for said property." (Italics ours.)

Sections 57, 58 and 59 of the Land Law of Puerto Rico (Act No. 26, Laws of P. R., 1941) are also invoked to sustain the present proceeding on the merits. And §23 of the said Land Law vests in the Land Authority certain rights and authority in connection with the aforesaid option of the People as to illegally held lands.

It is evident that, in implementing with sanctions the Act of Congress inhibiting landholdings in excess of 500 acres, the Insular Legislature, in Act No. 47 of 1935, as amended, and the Land Law, went beyond the remedies provided in the ordinary *quo warranto* proceeding. Indeed, if it had not, the position of the defendant in the *Rubert Hermanos, Inc.,*

case would perhaps have been well taken. The defendant in that case contended that once judgment had been entered dissolving the corporation, there was nothing further for this court to do in the proceeding. While the Circuit Court of Appeals disagreed with this court as to the necessity at that stage for (a) the appointment of a receiver, and (b) the control and operation of *all* the real and *personal* property of the defendant corporation by the receiver, the Circuit Court of Appeals agreed with us that the option referred to above was valid, and was effective even subsequent to the judgment of dissolution of the corporation (118 F. (2d) 752, 58). And the decision of the Supreme Court of the United States in reversing the Circuit Court of Appeals and upholding the appointment of a receiver by this court in that case, was predicated on the premise that the option was valid and subsisted even after dissolution of the offending corporation. *Rubert Hermanos, Inc.* v. *People of Puerto Rico,* 315 U. S. 637. Cf. *People* v. *Central Cambalache,* 59 P.R.R. 59, 74, 75.

It would not be appropriate for us at this stage of this proceeding to pass on the validity of the Land Law or to explore its precise meaning. Likewise, we do not undertake at this time to determine the effect of previous federal and insular statutes on the defendants and their operations. But if, as contended by the plaintiff, we should finally hold that by reason of their ownership of some lands, and leases of other lands from the lessor defendants, the petitioners are in ownership and control or land in violation of law, the impact of Act No. 47, as amended, and the Land Law would, by virtue of the aforesaid options, undeniably affect the interests of the lessor defendants, making them indispensable parties herein under the authorities already noted.

We find it unnecessary, in coming to that conclusion, to determine if the aforesaid options would affect the ownership interests of the lessors, or only the leaseholds. But

assuming, without deciding, that only the leaseholds would be affected, these would be subject, if the plaintiff prevails herein, to the said options at the "reasonable" or "fair" price, which might be different from the rental fixed in the leases.

In addition, as the Circuit Court of Appeals pointed out in the second *Rubert Hermanos, Inc.*, appeal (118 F. (2d) 752, 59), the options perhaps relate only to holdings of land in excess of 500 acres. The question of whether ownership *or* lease of not more than 500 acres of land would finally be permitted in a particular case, is one of a number of problems which this court would be called on to consider. As a matter of fact, as already noted, the Supreme Court of the United States approved of the action of this court in directing the receiver in the *Rubert Hermanos Inc.* case to take over all the property, including personalty, saying in 315 U. S. 637 at p. 648 that "it is enough to say that everyone concedes that the properties constitute a working unit in growing, cutting and grinding sugar. To separate the land from the machinery and other personalty pending the People's election between alternative procedures would have been inexcusable economic waste. It was altogether proper for the Supreme Court to recognize these realities and to permit the receiver to preserve the enterprise as a going concern pending a final settlement."

In brief, since for our present purpose ownership and control by lease stand substantially on the same footing, to assert that there is a separable controversy affecting the leaseholds and the lessors thereof is akin to the contention, which nobody makes, that there is a separable controversy involving each tract of land owned by the petitioners. As expressed by Circuit Judge Hutchison in *Lake* v. *Texas News Co.*, 51 F. (2d) 862 (District Court, Tex., 1931) at p. 863, this case involves "one controversy against them both; not two controversies, one against each."

Whether this suit must fail for nonjoinder of additional lessor defendants, and whether that defect, if it exists, is curable by subsequent joinder are matters not before us at this time.

Finding as we have, that the lessors of land are indispensable parties herein and that no separable controversy involving petitioners exists, we are unable to see how the failure of the plaintiff to join lessors of land in the first proceeding filed against the petitioners and in other *quo warranto* proceedings requires that we hold as a matter of law that such lessors were fraudulently joined in this case to prevent removal.

In *Chicago B. & Q. Ry. Co.* v. *Willard*, 220 U. S. 413, the plaintiff in a tort action filed in a state court joined the lessor and the lessee of a railroad. A petition to remove to the federal court was granted. The Circuit Court of Appeals held that the federal court lacked jurisdiction. This judgment was affirmed on appeal, the Supreme Court finding that under the applicable local law there was a joint cause of action against both the lessor and lessee railroad companies. The Court answered the contention as to fraudulent joinder at page 427 as follows:

". . . it cannot be predicated of the plaintiff that he fraudulently and improperly made the Illinois corporation a co-defendant with the Iowa corporation when such a charge is negatived, as matter of law, by the fact that the plaintiff was, as we have seen, entitled under the laws of Illinois, where the cause of action originated and within which the road in question was located, to bring a joint action against the Illinois and Iowa companies. *Ill. Central R.R. Co.* v. *Sheegog,* 215 U.S. 308, 316. He may have preferred to have the case tried in the state court, just as the Iowa corporation preferred the Federal court. But these preferences or motives, not fraudulent or unnatural, were of no consequence. They were immaterial in determining whether the plaintiff had a legal right to bring a jont action against the lessor and lessee companies and to carry it on in that form to a conclusion."

194

To the same effect: *Ill.* v. *Sheegog, supra,* at p. 318; *Chicago* v. *Dowell, supra,* at p. 114; *Norwalk* v. *Air-Way Electric Appliance Corp.,* 87 F. (2d) 317 (C.C.A. 2d, 1937); *Culp* v. *Baldwin,* 87 F. (2d) 679 (C.C.A. 8th, 1937); *Hoffman* v. *Metz,* 31 F. Supp. 204 (1940).

An order will be entered denying the petition for removal of the information to the District Court of the United States for Puerto Rico.