CHIEF JUSTICE WILLIAMS
delivered the opinion op the court:
W. N. Peterson, being elected sheriff of Marshall county, at the January term, 1861, of the county court, was qualified, and executed the county levy and revenue bond, with appellants and W. B. Ely as his securities, and intended to execute the general official bond with the same, but by inadvertence W. B. Ely did not sign this latter bond.
The only county court order relating thereto is as follows: “This day came Wm. N. Peterson, who produced a certificate purporting his election as sheriff of Marshall county, and was thereupon duly sworn into office, and, with R. Fletcher, P. Palmer, R. F. Stone, S. W. Harrell, James Thompson, W. B. Ely, H. Johnson, and Samuel Mathis as his securities, executed covenant as required by law.’’''
He entered upon the discharge of his office, and had in his hands an execution in appellees’ favor, which he did not return for thirty days after the return day thereof; and for this delinquency appellees brought this suit.
The securities made defense, substantially a special plea of non est factum and nul tiel record, and some others not necessary to be noticed. The court found against them on the plea of nul tiel record, and the jury found for the plaintiffs on the other issues under the peremptory instruction of the court.
*307 The evidence shows that Ely went into court to sign the necessary bonds of Peterson, and did sign the county levy and revenue bonds; and as these were the only ones presented to him, he left, supposing he had signed all that were necessary to be executed by the sheriff.
As he did not sign the bond sued on, and as there is no county court order approving this bond without Ely’s name, we are called on to determine whether it was obligatory on the other securities. This is an important and formidable question.
By section 1, article 1, chapter 91, 2 Revised Statutes, 339, every sheriff is required, before he enters upon the “duties of his office,” to take the oath therein prescribed, in addition to the constitutional one. By section 3 he is required to execute the prescribed obligation to the Commonwealth', which is the form of the one sued on. By section 4, “ the sureties in the bond must be good for the amount of all moneys, except what is payable into the State Treasury, which will probably pass through the sheriff’s hands during his continuance in office; they shall be approved by the county court, and the bond taken by its clerk under its supervision, and witnessed by him or his deputy
The county court being a court of record, can only speak by its record, especially in the absence of any issue by the pleadings of mistake or fraud; the approval, therefore, by the county court, of an officer’s securities, must appear of record.
Plowever numerous and solvent the proposed securities may be, this does not make the proposed bond official nor obligatory until the court has passed its judgment of approval; indeed, until this, it is not delivered to the Commonwealth, nor can be. It is this approval by the tribunal designated by law which completes its execution and delivery, and makes it obligatory.
*308 When the county court, therefore, approves the proposed names and individuals as securities in a bond, and directs its clerk to prepare the bond, he has no more authority to witness and accept it, until all the named securities sign it, than he has to accept it without the principal’s signature. If he may waive the signature of one security, he may waive more, until all are waived.
When the court has designated certain persons and approved them as sureties, no alteration .can be made by 'leaving off a name or substituting another therefor. The bond must be prepared and executed in conformity to the judgment of approval, else it is not the approved and accepted bond by the court, and every alteration by the clerk, either in omitting a designated party or substituting another, is wholly unauthorized, and his attestation to such a bond of no validity.
Besides, when the principal has proposed certain names as his securities, and these have been approved by the coui't, each of the securities, as he signs, has both the legal and moral right to expect and rely upon the officers to see that each approved party shall sign it, and not to regard it as an executed and delivered obligation until so perfected.
In Commonwealth vs. Davis et al. (9 B. Mon., 130), it is said : “ It is further objected that the declaration is defective in not showing that the bond sued on was accepted by the county court. We concede that, without such acceptance, it was not good as a statutory bond; and that although, if executed to the relator, it might have been good as a common law bond, it is of no avail as a bond to the Commonwealth, or as the basis of an action in her name for the benefit of an individual as relator, except so far as the bond and suit upon it are authorized by statute.” But the court held that these things were to *309 be presumed upon demurrer; in this ease it is made to appear by plea and proof.
Our statutes not only authorize the county court and county attorney to keep a supervising, controlling watchfulness over the official bonds of the sheriff, but make it their duty to do so; hence, the sheriff may, from time to time, be compelled by them to execute new bonds when, from any cause, the old ones become insecure, either from some defect therein or from sufficient solvency of the obligors therein. It is the duty of the court and county attorney to keep a watchful vigilance over these official bonds, and Peterson should have been required to execute another bond, and, on failure, his office should have been declared vacant.
The securities who did sign the bond were under neither a legal nor moral duty to see that all the approved parties had signed it, nor to see that Peterson should execute another bond. They had a right to rely upon the legal discharge of official duty by those whose duty it was to see a proper bond executed, and to, dismiss all oversight of it.
There being no record evidence that the bond, as executed, was ever approved by the court, nor that the securities who did sign it were approved, but the only order shown negativing this, the decision of the court upon the issue of no record, and his peremptory instruction to the jury, were both erroneous.
The bond itself is no record until sanctioned and accepted by the court or executed according to its order of approval, which action of the court can only be established by its own records.
Wherefore, the judgment is reversed, with directions for further proceedings consistent herewith.
Peterson having died, the suit was abated as to him.