## MADISONVILLE TRACTION COMPANY *v.* SAINT BERNARD MINING COMPANY.

### APPEAL FROM THE CIRCUIT COURT OF THE UNITED STATES FOR THE WESTERN DISTRICT OF KENTUCKY.

No. 362.   Submitted November 28, 1904.—Decided January 16, 1905.

In regard to the removal of cases the following principles have been settled:
If the case be a removable one,·that is, if the suit, in its nature, be one of which the Circuit Court could rightfully take jurisdiction, then

upon the filing of a petition for removal, in due time, with a sufficient bond, the case is, in law, removed, and the state court in which it is pending will lose jurisdiction to proceed further, and all subsequent proceedings in that court will be void.

After the presentation of a sufficient petition and bond to the state court in a removable case, it is competent for the Circuit Court, by a proceeding ancillary in its nature—without violating § 720, Rev. Stat., forbidding a court of the United States from enjoining proceedings in a state court—to restrain the *party* against whom a cause has been legally removed from taking further steps in the state court.

If upon the face of the record, including the petition for removal, a suit does not appear to be a removable one, then the state court is not bound to surrender its jurisdiction, and may proceed as if no application for removal had been made.

Under the judiciary act of 1887, 1888, a suit cannot be removed from a state court unless it could originally have been brought in the Circuit Court of the United States.

A State cannot by any statutory provisions withdraw a suit in which there is a controversy between citizens of different States from the cognizance of the Federal courts.

A proceeding brought by a Kentucky railroad company in the County Court under §§ 835–839, Kentucky Statutes, to condemn lands for a public use, valued at over $2,000, belonging to a corporation which is a citizen of another State, is a suit involving a controversy to which the judicial power of the United States extends within the meaning of the judiciary clauses of the Constitution and of which the Circuit Court has original cognizance under § 1 of the judiciary act of 1887 and may be removed to the Circuit Court of the United States.

In the exercise of the jurisdiction conferred upon it of controversies between citizens of different States, a Circuit Court of the United States is for every practical purpose a court of the State in which it sits and will enforce the rights of the parties according to the law of that State taking care, as a state court must, not to infringe any right secured by the Constitution and the laws of the United States. And in a case of condemnation it would proceed under the sanction of, and enforce, the state law so far as it was not unconstitutional.

It is fundamental in American jurisprudence that private property cannot be taken by the Government, National or state, except for purposes which are of a public character, although such taking be accompanied by compensation to the owner.

It is for the State, primarily and exclusively, to declare for what local public purposes private property, within its limits, may be taken upon compensation to the owner, as well as to prescribe a mode in which it may be condemned and taken. But the State may not prescribe any mode of taking private property for a public purpose and of ascertaining the compensation to be made therefor, which would exclude from the

jurisdiction of a Circuit Court of the United States a condemnation proceeding which in its essential features is a suit involving a controversy between citizens of different States.

THE facts are stated in the opinion.

*Mr. David W. Fairleigh* and *Mr. N. T. Crutchfield* for appellant.

*Mr. E. G. Sebree* and *Mr. C. Waddill* for appellee.

MR. JUSTICE HARLAN delivered the opinion of the court.

The Madisonville Traction Company, a Kentucky corporation, having by its charter authority to construct an electric railroad, filed its application in the County Court of Hopkins County, in that Commonwealth, to condemn for its use certain lands belonging to the Saint Bernard Mining Company, a Delaware corporation engaged in mining coal—the Traction Company being styled in the application as plaintiff and the Mining Company as defendant.

The application was made under the Kentucky Statutes relating to the condemnation of lands. The nature of those proceedings, whether judicial or not, appears from certain provisions of those statutes which may be summarized as follows:

Any company authorized to construct a railroad, if "unable to contract with the owner of any land or material *necessary for its use* for the purpose thereof," may file in the office of the clerk of the County Court a description of such land or material, and have commissioners appointed to assess the damages which the owner is entitled to receive. Kentucky Stat. § 835.

The commissioners are required to make their award of damages in writing, giving the names of the owners, and whether non-residents of the State, infants, of unsound mind, or married women. Kentucky Stat. § 836.

It is made the duty of the clerk of the court, upon application

of the company, to issue process against the owners to show cause why the report should not be confirmed, and make such orders as to non-residents and persons under disability as are required by the Civil Code of Practice in actions against them in the Circuit Court. Kentucky Stat. § 837.

At the first regular term, "after the owners shall have been summoned the length of time prescribed by the Civil Code of Practice before an answer is required," the court must examine the report and pass upon it. Kentucky Stat. § 838.

If exceptions are filed by either party, a jury must be empanelled to try the issue of fact, and judgment rendered in conformity to the verdict, if sufficient cause to the contrary be not shown. Either party may appeal to the Circuit Court, the appeal to be tried de novo.

Upon the confirmation of the report of the commissioners or the assessment of damages by the court, as provided, and the payment to the owners of the amount due, as shown by the report of the commissioners when confirmed, or as shown by the judgment of the court when the damages are assessed by it, and all costs adjudged to the owner, the railroad company becomes entitled to take possession of the land and material, and to use the same for the purpose for which it was condemned as fully as if the title had been conveyed to it. But when an appeal is taken from the judgment of the County Court by the company it is not to be entitled to take possession of the land or material condemned until it pays into court the damages assessed and all costs. Kentucky Stat. § 839.

The commissioners appointed by the County Court, in the above proceeding, awarded $100 as damages to be paid to the Mining Company.

Process having issued, the Mining Company, before any action was taken upon the report, filed its petition and bond for the removal of the case into the Circuit Court of the United States, alleging, among other things, that the value of the matter in dispute, exclusive of interest and costs, exceeded $2,000. The petition for removal distinctly alleged, as the

ground of removal, that the two companies were corporations of different States.

The sufficiency of the bond was not disputed. But the County Court refused to recognize any right of removal, and the Kentucky corporation was about to proceed in the prosecution of its case in that court, despite the application for removal. Thereupon the Delaware corporation filed in the Circuit Court of the United States a complete transcript of the proceedings in the state court.

Subsequently the present original suit in equity was instituted in the Federal court by the Mining Company against the Traction Company. The bill, repeating the allegations in the petition for removal as to the diverse citizenship of the two corporations, showed that, notwithstanding what had been done to have the cause removed, from the state court, the Traction Company was about to proceed to have the lands condemned in the case instituted in the County Court. Among other things the bill alleged that plaintiff denied the right of the Traction Company to have the lands in question condemned, and averred that the report of the commissioners was insufficient in law; that the commissioners acted improperly, unfairly and unfaithfully in their viewing of the land, in the preparation of their report and in awarding damages; that $100 was wholly inadequate as compensation, and was assessed and given under the influence of passion and prejudice, or some other illegal motive; that the land sought to be taken was worth, intrinsically, a great deal more than that amount; that the incidental damages done to the property of plaintiff in the construction of the road, (which damages under the laws of Kentucky the said commissioners should have taken into consideration and assessed, but did not, § 836,) exceeded $2,000; that the plaintiff's property and business will not be benefited in the least degree by the construction or prudent operation of the railroad; and that "it is proposed to deprive it of over nine acres of its land, which through its location is valued at and is worth over $2,500, and is so situated that such

deprivation will irreparably injure and damage its remaining land."

The relief asked in the present suit was that the Traction Company be restrained and enjoined from further prosecuting the case in the County Court or taking any further steps therein.

The Traction Company demurred to the bill, one of the grounds of demurrer being that the Circuit Court was without jurisdiction or authority, under the Constitution and laws of the United States, to grant the injunction asked for, or any other relief. The Circuit Court sustained its jurisdiction and overruled the demurrer. The Traction Company stood by its demurrer, and a final decree was entered enjoining that company from any further prosecution of the case in the County Court.

It has been observed that the parties to the proceeding in the County Court are corporations, and therefore each is to be deemed, for the purpose of suing and being sued in the Federal court, a citizen of the State by whose laws it was created. The questions presented by the record are these: Was the proceeding in the state court a suit or controversy to which the judicial power of the United States extends? If a suit or controversy, was it removable to the Circuit Court of the United States? If removable, was it, in law, removed, and was it competent for that court, after the removal of the case, to enjoin the Traction Company from further proceeding in the state court?

We recognize the importance of these questions, and have given them the fullest consideration.

Certain principles, relating to the removal of cases, have been settled by former adjudications. They are:

1. If a case be a removable one, that is, if the suit, in its nature, be one of which the Circuit Court could rightfully take jurisdiction, then upon the filing of a petition for removal, in due time, with a sufficient bond, the case is, in law, removed, and the state court in which it is pending will lose jurisdiction to proceed further, and all subsequent proceedings in that court will be void. *Railroad Company* v. *Mississippi*, 102

U. S. 135, 141; *Railroad* v. *Kontz*, 104 U. S. 5, 14; *Steamship Company* v. *Tugman*, 106 U. S. 118, 122; *St. Paul & Chicago Ry. Co.* v. *McLean*, 108 U. S. 212, 216; *Crehore* v. *Ohio &c. Railway Co.*, 131 U. S. 240, 243; *Kern* v. *Huidekoper*, 103 U. S. 485, 493.

2. After the presentation of a sufficient petition and bond to the state court in a removal case, it is competent for the Circuit Court, by a proceeding ancillary in its nature—without violating section 720 of the Revised Statutes, forbidding a court of the United States from enjoining proceedings in a state court—to restrain the *party* against whom a cause has been legally removed from taking further steps in the state court. *French, Trustee*, v. *Hay*, 22 Wall. 238, 252; *Dietzsch* v. *Huidekoper*, 103 U. S. 494, 496, 497; *Moran* v. *Sturges*, 154 U. S. 256, 270. See also, *Sargent* v. *Holton*, 115 U. S. 348; *Harkrader* v. *Wadley*, 172 U. S. 148, 165; *Gates* v. *Bucki*, 53 Fed. Rep. 961; *Texas & Pacific Ry. Co.* v. *Kuteman*, 54 Fed. Rep. 547; *In re Whitelaw*, 71 Fed. Rep. 733, 738; *Iron Mountain R. R. Co.* v. *Memphis*, 96 Fed. Rep. 113; *James* v. *Central Trust Co.*, 98 Fed. Rep. 489.

3. It is well settled that if, upon the face of the record, including the petition for removal, a suit does not appear to be a removable one, then the state court is not bound to surrender its jurisdiction, and may proceed as if no application for removal had been made. *Stone* v. *South Carolina*, 117 U. S. 430, 432; *Carson* v. *Hyatt*, 118 U. S. 279, 281; *Marshall* v. *Holmes*, 141 U. S. 589, 595; *Burlington &c. Railway Co.* v. *Dunn*, 122 U. S. 513, 515.

So that the fundamental question here is whether the case, brought in the County Court, was a removable one. If it was, then the decree of the Circuit Court, restraining the Traction Company from taking further steps in the local court, after the removal of the case to the Federal court, was right; but if the case was not a removable one, then the decree was erroneous.

The rule is now settled that, under the judiciary act of 1887, 1888, a suit cannot be removed from a state court, unless

it could have been brought originally in the Circuit Court of the United States. *Tennessee* v. *Union & Planters' Bank*, 152 U. S. 454; *Mexican Nat. R. R.* v. *Davidson*, 157 U. S. 201; *Metcalf* v. *Watertown*, 128 U. S. 586; *Minnesota* v. *Northern Securities Co.*, 194 U. S. 48.

Why could not the proceeding instituted in the County Court have been brought originally in the Federal court? The case, as made in the County Court, was, beyond question, a judicial proceeding; it related to property rights; the parties are corporate citizens of different States; and the value of the matter in dispute exceeded the amount requisite to give jurisdiction to the Circuit Court. It was therefore a proceeding embraced by the very words of the Constitution of the United States which declares that the "judicial power shall extend . . . to controversies . . . between citizens of different States," as well as by the act of 1887 (§ 1), which declares "that the Circuit Courts of the United States shall have *original* cognizance, concurrent with the courts of the several States, of *all* suits of a civil nature at common law or in equity, where the matter in dispute exceeds, exclusive of interest and costs, the sum or value of two thousand dollars, . . . in which there shall be a controversy between citizens of different States." In view of these explicit provisions it is clear that the proceeding in the County Court was a suit or controversy within the meaning both of the Constitution and of the judiciary act. We could not hold otherwise without overruling former decisions of this court. Let us see whether this be not so.

Referring to the clause of the Constitution defining the judicial power of the United States, Chief Justice Marshall, speaking for the court in *Osborn* v. *Bank of the United States*, 9 Wheat. 738, 819, said: "This clause enables the judicial department to receive jurisdiction to the full extent of the Constitution, laws and treaties of the United States, when any question respecting them shall assume such a form that the judicial power is capable of acting on it. That power is capable of acting only when the subject is submitted to it, by a party

who asserts his rights in the form prescribed by law. It then becomes a case, and the Constitution declares, that the judicial power shall extend to all cases arising under the Constitution, laws and treaties of the United States."

In *Kohl* v. *United States*, 91 U. S. 367, 376, which was a suit in the Circuit Court of the United States to condemn lands for a public building, this court, speaking by Mr. Justice Strong, said: "It is difficult then, to see why a proceeding to take land in virtue of the Government's eminent domain, and determining the compensation to be made for it, is not, within the meaning of the statute, a suit at common law, when initiated in a court. It is an attempt to enforce a legal right."

Two cases very much in point are *Boom Co.* v. *Patterson*, 98 U. S. 403, and *Searl* v. *School District No. 2*, 124 U. S. 197.

*Boom Co.* v. *Patterson* was a case of condemnation under a statute authorizing a County District Court to appoint commissioners to appraise the value of the property to be taken. The local statute provided that if the appraisement was not satisfactory, the matter could be brought before the court, where the issues of fact would be tried by a jury, unless a jury was waived. It was a case of diverse citizenship, and, upon the petition of the defendant, a citizen of another State, it was removed from the inferior local court to the Circuit Court of the United States. One question was whether the case was, in its nature, excluded from the jurisdiction of the Federal court. Referring to the contention that the proceeding to take private property for public use was an exercise by the State of its sovereign right of eminent domain, and with its exercise the United States, a separate sovereignty, had no right to interfere by any of its departments, this court, speaking by Mr. Justice Field, said: "But notwithstanding the right is one that appertains to sovereignty, when the sovereign power attaches conditions to its exercise, the inquiry whether the conditions have been observed is a proper matter for judicial cognizance. If that inquiry take the form of a proceeding *before the courts* between parties—the owners of the land on the one side, and

the company seeking the appropriation on the other,—there is
*a controversy which is subject to the ordinary incidents of a civil
suit,* and its determination derogates in no respect from the
sovereignty of the State." Again in the same case: "It has
long been settled that a corporation will be treated, where
contracts or rights of property are to be enforced by or against
it, as a citizen of the State under the laws of which it was
created, within the clause of the Constitution extending the
judicial power of the United States to controversies between
citizens of different States. *Paul* v. *Virginia,* 8 Wall. 177.
And in *Gaines* v. *Fuentes,* 92 U. S. 20, it was held that a con-
troversy between citizens is involved in a suit whenever any
property or claim of the parties, capable of pecuniary estima-
tion, is the subject of litigation and is presented by the plead-
ings for judicial determination. Within the meaning of these
decisions, we think the case at bar was properly transferred to
the Circuit Court, and that it had jurisdiction to determine
the controversy."

*Searl* v. *School District No. 2* was also a proceeding for the
condemnation of private property to public use for school
purposes. It was commenced by petition filed in a County
Court, a subordinate tribunal of one of the counties of Colo-
rado. The local statute authorized the compensation to be
fixed by a jury of six freeholders, with a right of appeal. The
question in the case was as to the removability of the case from
the County Court to the Federal Court. This court, speaking
by Mr. Justice Matthews, said: "Such a proceeding, according
to the decision of this court in *Kohl* v. *United States,* 91 U. S.
367, is a suit at law within the meaning of the Constitution of
the United States and the acts of Congress conferring jurisdic-
tion upon the courts of the United States." After referring
to prior cases, including *Boom Co.* v. *Patterson,* the opinion
proceeds: "The fact that the Colorado statute provides for
the ascertainment of damages by a commission of three free-
holders, unless at the hearing a defendant shall demand a jury,
does not make the proceeding *from its commencement* any the

less *a suit* at law within the meaning of the Constitution and acts of Congress and the previous decisions of the court. . . . It is an adversary judicial proceeding from the beginning. The appointment of commissioners to ascertain the compensation is only one of the modes by which it is to be determined. The proceeding is, therefore, a suit at law from the time of the filing of the petition and the service of process upon the defendant." 124 U. S. 199, 200.

It will be observed from an examination of the *Searl* case that this court cited with approval *Colorado Midland Railway Co.* v. *Jones,* 29 Fed. Rep. 193, and the *Mineral Range Railroad Co.* v. *Detroit & Lake Superior Copper Co.,* 25 Fed. Rep. 515. Those cases fully sustain the proposition that the case brought in the state court was a suit within the meaning of the Constitution and the judiciary act.

In the first one named, which was a proceeding under a local statute in an inferior state tribunal for the condemnation of lands for the use of a railway company, Mr. Justice Brewer, then Circuit Judge, after referring to the local statute under which the company proceeded and to *Boom Co.* v. *Patterson,* and *Searl* v. *School District,* held the case to be removable, although the proceedings for condemnation were somewhat different from those in an ordinary trial, saying: "I do not suppose that a State can, by making special provisions for the trial of any particular controversy, prevent the exercise of the right of removal. If there was no statutory limitation, the legislature could provide for the trial of many cases by less than a common law jury, or in some other special way. But the fact that it had made such different and special provisions would not make the proceeding any the less a trial, or such a suit as, if between citizens of two States, could not be removed to the Federal courts. If this were possible, then the only thing the legislature of a State would have to do to destroy the right of removal entirely would be to simply change and modify the details of procedure."

In *Mineral Range R. Co.* v. *Detroit & Lake Superior Copper*

*Co.*, Mr. Justice Brown, then District Judge, after referring to *Boom Co.* v. *Patterson*, and many other adjudged cases, said: "But conceding that if the only question in this case were the amount of damages to be paid by the railroad company, the jurisdiction of this court would be sustained by the authorities above cited, it is insisted that these cases are inapplicable, because by the statute of this State the jury or commissioners must pass upon the question of the necessity for taking the property, as well as the amount of damages to be awarded. But we think that, in this particular, counsel overlook the distinction between the *power* to condemn, which confessedly resides in the State, and *proceedings* to condemn, which the State has delegated to its *courts*. The proceeding is certainly not deprived of its character as a suit by reason of its taking cognizance of this additional question; and *if it be a suit*, the right of removal attaches. Whenever a right is given by the law of a State, and the courts of such State are invested with the power of enforcing such right, the proceeding may be removed to a Federal court if the other requisites of removability exist." 25 Fed. Rep. 520.

In the more recent case of *Smith* v. *Adams*, 130 U. S. 167, 173, Mr. Justice Field, speaking for the court and referring to the clauses of the Constitution and the statutes relating to the judicial power and the courts of the United States, said: "By those terms are intended the claims or contentions of litigants brought before the courts for adjudication by regular proceedings established for the protection or enforcement of rights, or the prevention, redress, or punishment of wrongs. Whenever the claim or contention of a party takes such a form that the judicial power is capable of acting upon it, then it has become a case or controversy."

It may be here said that the provisions of the local statutes of condemnation, referred to in the above cases, are substantially the same as those in the Kentucky statutes.

We cannot doubt, in view of the authorities, that the case presented in the County Court was a "suit" or "controversy

between citizens of different States," within the meaning of the Constitution and the laws of the United States. It was, as already said, a judicial proceeding initiated in a tribunal which constitutes a part of the judicial establishment of Kentucky, as ordained by its constitution, Const. Kentucky, § 140; and the court, although charged with some duties of an administrative character, is a judicial tribunal and a court of record. *Fletcher* v. *Leight,* 4 Bush, 303; *Pennington* v. *Woolfolk,* 79 Kentucky, 13.

Are the above cases inapplicable by reason of their having been decided prior to the passage of the judiciary act of 1887, 1888 limiting the right of removal to suits of which the Circuit Courts of the United States could take original cognizance? Clearly not. The difference between that act and the act of 1875 is wholly apart from the present discussion; for, both acts gave the Circuit Courts *original* jurisdiction of *all* suits, having the requisite amount in dispute, and in which there was a controversy between citizens of different States. So that what was a suit or controversy to which, by reason of diverse citizenship, the judicial power of the United States extended under the act of 1875, must be deemed a suit under the act of 1887, 1888. The only effect of the latter act, so far as the present question is concerned, was to restrict the right of removal from the state court to cases of which the Circuit Court could take original cognizance. And the present case, being a suit involving a controversy between citizens of different States, is manifestly of that character.

It is said, however, that when it is proposed to take private property for public purposes, the question of appropriation is one primarily and exclusively for the State to determine.

There ought not to be any dispute, at this day, in reference to the principles which must control in all cases of the condemnation of private property for public purposes. It is fundamental in American jurisprudence that private property cannot be taken by the Government, National or state, except for purposes which are of a public character, although such

taking be accompanied by compensation to the owner. That principle, this court has said, grows out of the essential nature of all free governments. *Loan Association* v. *Topeka,* 20 Wall. 655; *Cole* v. *La Grange,* 113 U. S. 1, 6. If the purpose be public the taking may be outright, provided reasonable, certain and adequate provision is made, at the time of appropriation, to ascertain and secure the compensation to be made to the owner. *Cherokee Nation* v. *Southern Kansas Railway Co.,* 135 U. S. 641, 659; *Sweet* v. *Rechel,* 159 U. S. 380, 399; *Western Union Tel. Co.* v. *Pennsylvania R. R. Co. et al,* 195 U. S. 540. Any state enactment in violation of these principles is inconsistent with the due process of law prescribed by the Fourteenth Amendment. *C., B. & Q. R. R. Co.* v. *Chicago,* 166 U. S. 226; *San Diego Land &c. Co.* v. *National City,* 174 U. S. 739, 754; *Smyth* v. *Ames,* 169 U. S. 466, 525. The position taken by the highest court of Kentucky on this general subject appears from *Tracy* v. *Elizabethtown &c. R. R. Co.,* 80 Kentucky, 259, 265. It was there said: "It is erroneous to suppose that the legislature is beyond the control of the courts in exercising the power of eminent domain, either as to the nature of the use or the necessity to the use of any particular property. For if the use be not public, or no necessity for the taking exists, the legislature cannot authorize the taking of private property against the will of the owner, notwithstanding compensation may be required."

Speaking generally, it is for the State, primarily and exclusively, to declare for what local public purposes private property, within its limits, may be taken upon compensation to the owner, as well as to prescribe a mode in which it may be condemned and taken. But the State may not prescribe any mode of taking private property for a public purpose and of ascertaining the compensation to be made therefor, which would exclude from the jurisdiction of a Circuit Court of the United States a condemnation proceeding which in its essential features is a suit involving a controversy between citizens of different States. "A State cannot," this court has said,

"tie up a citizen of another State, having property rights within its territory invaded by unauthorized acts of its own officers to suits for redress in its own courts." *Reagan* v. *Farmers' Loan & Trust Co.,* 154 U. S. 362, 391.

Now, it is true that the Circuit Court could not have the property in question condemned for local public purposes, if the State had not previously, by statute, authorized its condemnation. After the removal of a case of condemnation from a state court the Federal court would proceed under the sanction of state legislation. It would enforce the state law, unless that law authorized the appropriation of private property for purposes that were not really of a public nature. So far as authority to take the property for local public purposes was concerned, the Circuit Court could not enforce any other than the state law. It would respect the sovereign power of the State to define the legitimate public purposes for which private property may be taken, upon compensation to the owner being made or secured. But at the same time it could enforce, as of course it must, the authority of the Supreme Law of the Land, which expressly extends the judicial power of the United States to all suits involving controversies between citizens of different States, and which also, by statute, gives the Circuit Courts of the United States, without qualification, jurisdiction of such controversies. A State cannot by any statutory provisions withdraw from the cognizance of the Federal courts a suit or judicial proceeding in which there is such a controversy. Otherwise the purpose of the Constitution in extending the judicial power of the United States to controversies between citizens of different States would thereby be defeated. If the judiciary act of Congress admitted of the case in the County Court being brought within the original cognizance of the Circuit Court, that is an end of the matter, although it be a case of the appropriation of private property to public uses under the authority of the State. Under any other view a State, by its own tribunals, could deprive citizens of other States of their property by condem-

nation, without giving them an opportunity to protect themselves, in a National court, against local prejudice and influence.

It may, however, be urged that the Delaware corporation can be fully protected by the state court in its rights of property, because, if any Federal right be denied it, the authority of this court can be invoked upon writ of error to the highest court of the State. But the question whether the property is authorized by the local statute to be condemned, as well as the question of the amount of compensation to the owner, could not come here by writ of error from the state court. Such questions would not ordinarily involve a Federal right. In the present case the commissioners reported the damages to be only $100; whereas, the owner alleges that the amount awarded was grossly inadequate, practically confiscatory. That question, as well as the question whether the statute authorized the Traction Company to take the property, the Delaware corporation is constitutionally entitled, as between it and the Kentucky corporation, by reason of the diverse citizenship of the parties, to have determined upon their merits in a court of the United States, in which, presumably, it will be protected against local prejudice or influence. The Circuit Court, recognizing the right of the Traction Company to appropriate the land in question, if necessary for its purposes, could do all that is required by the Kentucky statute, and meet fully the ends of justice. Besides, a court always looks to substance and not to mere forms. Mere forms are not of vital consequence in cases of condemnation. *Kohl* v. *United States,* 91 U. S. 367, 375; *United States* v. *Jones,* 109 U. S. 513, 519.

It is suggested that the state legislature might have consummated the taking of the property of the Delaware corporation by means of a non-judicial tribunal, and thus left open simply the question of compensation to the owner of the property taken. We do not perceive that this suggestion is at all material in the present discussion; for, the State has

chosen to provide for the taking by means of what is conceded to be a suit in one of its judicial tribunals.   It is, in effect, conceded that the Circuit Court may be given jurisdiction of the question of compensation.   But the contention is, that in no case can the judicial power of the United States be invoked until the question of taking is consummated by a proceeding in the particular local tribunal designated by the State.   This view, it is supposed, finds support in the cases in which it has been held that an original suit directly against a State, or a suit against an officer of the State which, by reason of the particular relief sought, is in effect a suit against the State, may be limited by the State to suits brought in one of its own courts.   *Smith* v. *Reeves,* 178 U. S. 436.   This illustration is wide of the mark; for, the mandate of the Constitution of the United States (11th Amendment) is that "the judicial power of the United States shall not be construed to extend to any suit in law or equity commenced or prosecuted against one of the United States by citizens of another State or by citizens or subjects of any foreign state;" whereas, the judicial power of the United States and the original jurisdiction of the Circuit Courts, whatever may be ordained by state legislation, extends to suits in which there is a controversy between citizens of different States.   The exercise by the Circuit Courts of the United States of the jurisdiction thus conferred upon them is pursuant to the Supreme Law of the Land, and will not, in any proper sense, entrench upon the dignity, authority or autonomy of the States; for each State, by accepting the Constitution, has agreed that the courts of the United States may exert whatever judicial power can be constitutionally conferred upon them.   In the exercise of that power a Circuit Court of the United States, sitting within the limits of a State and having jurisdiction of the parties, is, for every practical purpose, a court of that State.   Its function, under such circumstances, is to enforce the rights of parties according to the law of the State, taking care, always, as the state courts must take care, not to infringe any right secured by the Constitution and the

laws of the United States.  It should, however, be remarked
that there is nothing in the Kentucky statute which indicates
any purpose on the part of the legislature of that Common-
wealth to fly in the face of the above cases or to evade the
principles announced in them.  It is not to be implied from
the statute in question that the State intended to exclude or
supposed that it could exclude from the Federal courts juris-
diction of any suit to which the judicial power of the United
States extended.

It was said that if the case was a removable one the time for
removal was after it was taken by appeal to the state Circuit
Court, where it could be tried *de novo*.  There is nothing in the
act of 1887, 1888 which sustains this view.  Was the case, as it
was in the County Court, a suit in which there was a contro-
versy between corporations of different States?  If so, the
right of removal was perfect under the act of 1887, 1888.
Under the Kentucky statute the condemning party was en-
titled, even after appeal to the Circuit Court, to pay into court
the damages assessed in the County Court, and before the case
was concluded in the Circuit Court to take possession of the
land and oust the owner.  Kentucky Stat. § 839; 80 Ken-
tucky, 259, 265.  Clearly, the owner was not bound to wait
until the proceedings in the County Court were concluded, or
until he was put out of  possession before exercising his right of
removal, if the case was a removable one.

We hold that as the proceeding in the County Court was a
suit involving a controversy between corporate citizens of
different States, it was one of which the Circuit Court of the
United States could have taken original cognizance, under the
judiciary act, and it was, therefore, a removable case.  And
being a removable case, it is to be regarded as having been
removed upon the filing of the petition and accompanying
bond for removal; in which event, it was competent for the
Circuit Court, having thus acquired jurisdiction of the subject
matter, and of the parties, to enjoin the Traction Company
from proceeding further in the state court.

For the reasons stated, the decree of the Circuit Court awarding the injunction must be affirmed.

*It is so ordered.*

MR. JUSTICE HOLMES, dissenting.

I regret that I am unable to agree with the decision of the court. The question on which I differ is whether a proceeding for the taking of land by eminent domain, authorized by the State of Kentucky to be begun in the Courts of Kentucky, can be begun in the Circuit Court of the United States, whenever one of the parties is a citizen of another State. Of course, I am speaking of the proceeding for the taking of the land, not of that for compensation, to which I shall refer later. The argument which does not command my assent, stated in a few words, is that such a proceeding in such a case is a controversy between citizens of different States, and therefore by the very words of the Constitution must be within the jurisdiction of the United States courts. It seems to me that this is rather too literal a reading, and, on the whole, is a sacrifice of substance to form.

The fundamental fact is that eminent domain is a prerogative of the State, which on the one hand may be exercised in any way that the State thinks fit, and on the other may not be exercised except by an authority which the State confers. The taking may be direct, by an act of the Legislature. It may be delegated to a railroad company, with a certain latitude of choice with regard to the land to be appropriated. It may be delegated subject to the approval of a legislative committee or of a board other than a court. When the State makes use of a court, instead, for instance, of a railroad commission, the character of the proceeding is not changed. The matter still is wholly within its sovereign control. The State may intervene after the proceedings have been begun, and take the land. It may direct the entry of a decree of condemnation. An illustration of its continuing power may be seen in *In re Northamp-*

*ton*, 158 Massachusetts, 299.   The matter of grade crossings had been referred by the Legislature of Massachusetts to the courts, and a petition was pending for the abolition of certain grade crossings in Northampton.   The case had been sent to commissioners, and they had reported.   Pending a motion to confirm their report the Legislature passed an act forbidding a change in that case without the consent of the city council. It was held that, as the whole subject was originally within the control of the Legislature, it did not cease to be so by being referred to the courts, and the act was sustained.

A further illustration, and one in which substance has prevailed over form, is to be found in the case of suits by citizens of another State against officers of a State.   In form such suits are controversies between citizens of different States and within the jurisdiction of the United States Courts.   But if, in substance, they have the effect of suits against a State, the jurisdiction is denied. And the decisions do not stop there, but when the State has waived its immunity, as it may, and has given permission to a suit against the officer in a state court, it still is held that, although there is a controversy between citizens of different States which thus has become subject to litigation, that litigation must be confined to the courts which the State has named.   Yet there is no doubt that, with the State's consent, its officers, or the State itself, could be sued in the courts of the United States.   *Smith* v. *Reeves*, 178 U. S. 436; *Chandler* v. *Dix*, 194 U. S. 590.

It seems to me that, if a State authorizes a taking to be acccomplished by certain machinery, the United States has no constitutional right to intervene and to substitute other machinery because the State has chosen to use its law courts rather than a legislative committee and thus to give to the exercise of its sovereign power the external form of a suit at law.   It seems to me plain that the exercise of that power depends wholly on the State, may be limited as the State chooses, and cannot be carried further than the State has authorized in terms.   Suppose that a proceeding for taking land is removed

to the United States Court contrary to the legislation of the State, by whose authority, I ask myself, is a subsequent taking to be decreed? It is open to any one who can think it to say that the attempt to use the state courts to the exclusion of the United States courts makes the taking void, but I cannot understand how a taking unauthorized by the State can be good. If I am right in supposing that the State has an absolute right to limit the exercise of eminent domain as it sees fit, then, so far as the construction of the Kentucky statute is concerned, I need only invoke the cases last cited, to show that the statute imports that the State meant to confine the proceedings to its own courts. Certainly it does not purport to authorize them elsewhere, and that is enough. *Smith* v. *Reeves,* 178 U. S. 436, 445; *Chandler* v. *Dix,* 194 U. S. 590, 592. The difference between myself and the majority is not merely on the construction of the Kentucky statutes. If that were all I should not express my dissent. But the difference as to construction is a consequence and incident of a difference on the far more important question of power. Of course, what I have said is without prejudice to the possibility that in case a question of rights under the Constitution of the United States should arise and be carried to the highest court of the State, it might be brought here by writ of error, as was said by Mr. Justice Harlan in *Smith* v. *Reeves.* I do not go into that, as it is immaterial now.

It is said that the question which I am discussing has been settled by the adjudications of this court. I do not think so. The only cases that have any bearing are *Boom Co.* v. *Patterson,* 98 U. S. 403, and *Searl* v. *School District No. 2,* 124 U. S. 197. In the former of these cases Mr. Justice Field states in the most explicit way that at the stage the case had reached when it was removed from the state court the compensation to be paid the owner of the land was the only question open. I have no criticism to make on that case. It seems to me to favor my views throughout. I think it very possible that after the title to property has been taken, if the question of com-

pensation still is unsettled, that may be a controversy within
the meaning of the Constitution. The sovereign power of the
State is at an end, and the former owner has a right under the
Fourteenth Amendment of the Constitution of the United
States to get his pay.

*Boom Co.* v. *Patterson* was followed by *Searl* v. *School District
No. 2*, seemingly without noticing the distinction that in the
latter case the property had not yet been appropriated. There
was no serious reasoning in the case, and I should think it a
most inadequate justification for trenching upon the powers
of the States, even if it were strictly in point. It arose, how-
ever, under the former statute as to removals, which did not
limit them to cases which could have been begun in the United
States courts. Whether I should think that a sufficient dis-
tinction if that case were before me now I shall not consider—
but I feel warranted in believing that no one who took part in
that decision imagined that he was establishing the doctrine
now laid down or any principle broad enough to cover the
present case. I cannot think that even Mr. Justice Matthews
would have denied that the day after removal the State could
have withdrawn the power to condemn the land and left the
court in the air, or could have condemned the land pend-
ing the proceedings without paying them the slightest re-
gard. If the State did retain those powers, I think it no less
retained the *delectus personarum* and the right to confine its
authority, while it left it outstanding, to the persons of its
choice.

I wish to add only that I am not aware of any limitations
in the Constitution of the United States upon a State's power
to condemn land within its borders, except the requirements
as to compensation. All that was decided in *Loan Association*
v. *Topeka*, 20 Wall. 655, and *Cole* v. *La Grange*, 113 U. S. 1,
was that the constitutions of certain States did not authorize
the taking of private property for a private use. But if those
decisions had been rested on the Fourteenth Amendment,
which they were not, and in my opinion could not have been,

I do not perceive that they have any bearing upon what I have said or upon the case at bar.

I am authorized to say that the CHIEF JUSTICE, MR. JUS-TICE BREWER and MR. JUSTICE PECKHAM concur in this dissent.