Filed 6/28/13  J.E. v. Superior Court CA4/2

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| J.E. et al., | |
| Petitioners, | E057738 |
| v. | (Super.Ct.No. INJ1100360) |
| SUPERIOR COURT OF THE COUNTY OF RIVERSIDE, | **OPINION** |
| Respondent; | |
| RIVERSIDE COUNTY DEPARTMENT OF PUBLIC SOCIAL SERVICES, | |
| Real Party in Interest. | |

ORIGINAL PROCEEDING; petitions for extraordinary writ.  John M. Monterosso, Judge.  Petitions denied.

Daniel L. Vinson for Petitioner J.E.

Charles A. Casey for Petitioner M.S.[1]

---

[1]  On May 24, 2013, counsel for petitioner J.E. and petitioner M.S. filed notices with this court that they had been relieved as counsel by the juvenile court due to

*[footnote continued on next page]*

No appearance for Respondent.

Pamela J. Walls, County Counsel, and Anna M. Deckert, Deputy County Counsel, for Real Party in Interest.

Petitioners J.E. (Father) and M.S. (Mother) each have filed petitions for extraordinary writ pursuant to California Rules of Court, rule 8.452(a) challenging the juvenile court's order terminating reunification services as to their children T.E and I.E and setting a Welfare and Institutions Code section 366.26 hearing.[2] This case was previously before this court on appeal by Father on the ground that the juvenile court

---

*[footnote continued from previous page]*
conflicts of interest. On May 29, 2013, we advised both counsel that they must appear for oral argument scheduled for June 5, 2013, because they had failed to comply with California Rules of Court, rule 8.35(c). Prior to oral argument both counsel complied and filed motions with this court to withdraw as counsel on appeal for M.S. and J.E. On June 4, 2013, J.E. contacted the clerk of this court and was informed that oral argument was scheduled for the following morning. During oral argument on June 5, 2013, M.S. contacted the clerk of this court and was advised oral argument was in session. At oral argument a request for a continuance made by J.E.'s counsel was denied. The requests by both counsel to be removed as counsel of record for J.E. and M.S. were granted. Additionally, we ordered counsel for J.E. and M.S. to file declarations with this court regarding the manner and nature of the notifications they gave their clients about counsel's motions to withdraw and to continue oral argument in this case on appeal. They have complied. The declarations state J.E. and M.S. were notified by email and letter of both the hearing in the juvenile court and the oral argument date in this court, and that at each hearing counsel were seeking to withdraw as counsel. M.S. and J.E. were further advised that they should appear at oral argument. M.S. and J.E. were absent from the superior court proceedings and from oral argument in this court. Counsel for M.S. and J.E. have provided this court with the contact information they have for the petitioners, and we will serve the opinion to the petitioners at those addresses.

    [2]    All further statutory references are to the Welfare and Institutions Code unless otherwise indicated.

erred by refusing to appoint him a guardian ad litem. We rejected the contention, and the

juvenile court proceedings continued. (*In re T.E.* (Dec. 19, 2012, E055491) [nonpub.

opn.]).[3] Reunification services were terminated for Father and Mother at a 12-month

review hearing, and a section 366.26 hearing was scheduled. By order of this court on

February 25, 2013, we stayed the section 366.26 hearing upon the filing of the petitions.

Father and Mother now argue that the juvenile court lacked jurisdiction between

February 28, 2012, the date on which Mother filed a notice of removal (NOR) to federal

court, and November 16, 2012, the date the federal court remanded the matter back to the

juvenile court after finding it lacked subject-matter jurisdiction; accordingly, any

proceedings held during this time period are void. Father additionally claims that he was

not given reasonable reunification services. We reject their contentions and deny the

petitions.

I

PROCEDURAL AND FACTUAL BACKGROUND

A.      *Removal of I. and T. From Parental Custody*

On June 6, 2011, the Riverside County Department of Public Social Services (the

Department) received a referral regarding general neglect by Father and Mother of six-

year-old T. and four-year-old I. It was reported by someone at T.'s school that she

suffered from extreme behavioral problems. It was reported that Father was

---

[3]      On March 1, 2013, we ordered that the prior record in case No. E055491 be
incorporated in the record in this case, and we will refer to the prior opinion for the facts.

schizophrenic. A second referral reported that on June 2, Father had threatened Mother and the maternal grandmother (Grandmother). Mother initially refused to disclose the whereabouts of Father and I., but they were later found in a park. Father had difficulty standing still, and his fingers were moving rapidly. I. was hot and thirsty.

On December 7, 2010, Father had been admitted to the UCLA Neuropsychiatric Hospital for 14 days on a mental health hold for threatening to kill Mother and Grandmother.

On June 10, 2011, the Department filed a section 300 petition alleging a failure to protect and inability to provide proper care due to mental illness and developmental disability or substance abuse (§ 300, subd. (b)) and serious emotional damage (*id.*, subd. (c)), based on Father's mental illness, evidenced by his angry outbursts and hospital hold; domestic violence between the two; Mother's suffering from mental illness, as evidenced by her attempted suicide in 2009; Mother's neglect of I., evidenced by leaving her in the care of Father; and severe emotional damage to T. On June 13, 2011, the juvenile court found a prima facie case and ordered T. and I. be detained and remain in the custody of the Department with a foster family.

B. *Jurisdictional/Dispositional Reports and Hearing*

In a jurisdictional/dispositional report filed on July 6, 2011, the Department recommended that I. and T. remain in the custody of their aunt, M.K. (where they had been placed on June 13, 2011). On August 23, 2011, a temporary restraining order (filed by Mother's counsel) was issued against Father to stay away from Mother, Grandmother,

4

and the children. According to an affidavit submitted in support of the restraining order, on August 22, 2011, Father had thrown a book at mother, hitting her in the face; dragged her; and stomped on her head with his foot. He also bit Mother's ear.

The jurisdictional/dispositional hearing was held on August 24, 2011. An amended petition was filed. The allegations had been amended to allege only under section 300, subdivision (b), and the only facts supporting the accusations were that Father had exhibited mental health issues evidenced by his hospitalization, which created a detrimental home environment; Mother and Father engaged in domestic violence; and Mother suffered from anxiety and depression, endangering the well-being and safety of the children. Mother and Father admitted to the allegations in the petition. The juvenile court found the allegations true under section 300, subdivision (b) against both parents as alleged in the amended petition for jurisdictional purposes. Both were granted reunification services.

In a report filed on November 8, 2011, T. and I. advised a social worker they no longer wanted to visit with Mother, and T. did not want to visit with Father because he scared her.

C.      *Six-Month Status Review Report*

A six-month status review report was filed on February 16, 2012. I. and T. remained in the care of M.K. Mother and Father were living with Grandmother. T. was doing better after receiving counseling and had reduced her behavioral outbursts. I. was

developing normally but needed to see a therapist regarding coping skills and depression. Mother was suffering from bipolar disorder but would not take her medication.

The Department recommended that Father receive services including psychological evaluation, medication evaluation, individual therapy, and a parenting educational program. At the time of the dispositional hearing, Father was incarcerated. Upon his release, the Department was unable to contact him, and he did not contact the Department. Father finally came to a meeting at the Department on January 26, 2012, and claimed that he would complete the necessary services. He reviewed his case plan but did not sign it because he wanted his attorney to review it.

Up until October 26, 2011, Mother and Father had visits outside the Department's offices supervised by M.K. However, Mother had tried to take the children from M.K. during a visit, so on November 23, 2011, the visits were moved to the Department to be supervised. Mother and Father refused to go to the Department for visitation, so no visits had occurred since November.

An addendum report was filed on March 15, 2012. Mother had completed no services despite being referred. On February 6, 2012, the Department completed a referral for individual therapy and a medication evaluation for Father at Indio Mental Health. An email was sent to Mother and Father on February 28, 2012, with the information. As of March 14, Father had not contacted Indio Mental Health. Father had also been referred to a parenting education class on February 6, 2012, but had failed to have any contact with the program. Father had been referred for a psychological

6

evaluation. Mother contacted the referred doctor and told him that Father had his own psychiatrist and did not need an evaluation.

On February 27, 2012, Father had violated a restraining order keeping him 100 feet from the children by showing up at a church M.K. and the children were attending. He initially refused to leave. No sanctioned visitation between Mother and the children had occurred during the reporting period.

A contested review hearing was conducted on March 20, 2012. Father was not present. At the hearing, Mother's NOR was lodged by the juvenile court. It appeared to have been filed in the federal court on February 28, 2012. In the NOR, Mother admitted that she was seeking to remove a "state court juvenile proceeding" for resolution in the federal court. She claimed that her federal constitutional rights were being violated by the removal of I. and T. and that Father was protected by the Americans with Disabilities Act. Mother claimed that the NOR was timely filed.

At the hearing, Mother advised the juvenile court that the case had been removed to the federal court on February 28, 2012. She argued that the juvenile court lacked jurisdiction to proceed with the matter. The juvenile court responded, "The federal court does not remove dependency matters from the state court. It hasn't happened. The Court has received no notice of that. Unless you have something in writing from a federal judge stating I no longer have jurisdiction, we will not discuss that further." Mother continued to argue that the federal court had taken over jurisdiction of the matter. The

juvenile court then stated, " . . . I'm going to make a finding right now that the federal court has not taken over jurisdiction of this case. I'm moving forward."

Mother left the courtroom, refusing to participate further in the proceedings. Reunification services were continued for six months. Restraining orders were filed against both parents for I. and T.

On April 5, 2012, an addendum report was filed. M.K. had reported to the Department that Mother and Father were becoming increasingly aggressive. They had shown up at church and at a store where M.K. had the children, claiming they were going to take custody of the children. Mother had also threatened a fellow parishioner at M.K.'s church. Mother insisted to another maternal aunt, G.R., that the case had been moved into federal court and the children should be returned to her immediately. Mother and Father refused to visit the children at the Department's offices but rather tried to visit the children on their own. Restraining orders were filed keeping Mother and Father 100 yards away from the children.

D.      *12-Month Status Review Report and Hearing*

A 12-month status review report was filed on August 31, 2012. Mother had notified the Department she was "domiciled" in Washington D.C. but kept her home in Rancho Mirage (although she was being evicted from the residence). Mother had not provided an address in Washington D.C., and there was none for Father. The only contact between Mother and the Department was by email. Mother mentioned in an

8

email that Father was with her, but there had been no contact with the Department by Father during the six-month reporting period.

Father had completed none of his services. He was reminded by email each month that he needed to complete services. There had been no visitation with I. and T., and the social worker contacted Mother and Father each month by email regarding visitation. M.K. and G.R. were willing to be legal guardians for the children. Mother continued to inform the social worker that the case had been removed to the federal court.

An addendum report was filed on October 9, 2012. An email was sent by Mother to the Department. Mother reported that she was "co-residing" in Virginia and in California. She claimed she was pregnant and about to give birth to a third child. Mother indicated that Father was with her so that he could receive medical treatment at a hospital in the area. M.K. and G.R. had decided they could not take legal guardianship of the children because of Mother's "havoc and drama." An adoptive family was being sought.

At the review hearing held on October 18, 2012, Mother and Father were not present. Mother was listed as being "in pro per." An email from Father had been received asking to relieve his attorney, but the request was denied. Father's counsel objected to the termination of reunification services.

The juvenile court noted, "[N]either parent has had any contact with the children during this reporting period, neither has participated in any program or plan designed to remove the conditions that brought their children before the Court." The juvenile court also stated, "Mother, quite frankly, is delusional. That's as plain as I can say it. She

9

describes this whole matter has somehow been removed to a federal court. Of course, nobody in this building has ever heard of such a thing, nor have we received such notice." Reunification services were terminated. Visitation was reduced to one time per month. A section 366.26 hearing was set.

On November 28, 2012, an order of remand was filed in the United States District Court. Mother had failed to respond to a request from that court to establish subject-matter jurisdiction.[4] We filed our opinion denying Father's claim that he was entitled to appointment of a guardian ad litem on December 19, 2012.

On April 24, 2013, the Ninth Circuit Court of Appeals issued an order denying Mother's request to proceed in forma pauperis in the appeal from the denial of her NOR because it found the appeal was "frivilous." Mother was ordered to pay a filing fee and prove why the appeal should not be summarily denied.[5] It appears the filing fee was paid on May 14, 2013.

II

STAY OF PROCEEDINGS

Mother and Father claim that the NOR filed in federal court on February 28, 2012, stayed any proceedings in the state court until the remand order was filed by the federal

---

[4] The hearing appealed from is the October 18, 2012, termination of reunification services. Hence, the proceedings occurring after that date are not relevant to this appeal and will not be considered despite being included in the clerk's transcript.

[5] On June 4, 2013, counsel for the Department filed a request for judicial notice of the order in the Ninth Circuit Court of Appeals and the docket for the case. We granted the request on June 10, 2013.

10

court on November 18, 2012.  They claim the juvenile court lacked jurisdiction to terminate reunification services and set a section 366.26 hearing.  They request remand to the juvenile court and proceedings be reinstated at the six-month review hearing stage.[6]

Removal of a case from a state court to a United States District Court is governed by the provisions of Title 28 United States Code sections 1441 and 1446.  Section 1441 provides, in relevant part:  "Except as otherwise expressly provided by Act of Congress, any civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant or defendants, to the district court of the United States for the district and division embracing the place where such action is pending."

The notice must be filed within 30 days after the defendant's receipt of the initial pleading in the state action (28 U.S.C. § 1446(b)(1)), unless the basis for removal is first shown by an amended pleading, in which case the notice must be filed within 30 days after receipt of the amended pleading (28 U.S.C. § 1446(b)(3)).  Removal is effected when the defendant files a copy of the notice of removal with the state court (28 U.S.C. § 1446(d)); at that point, "the State court shall proceed no further unless and until the case is remanded."  (*Ibid*.)  "It is clear that a removal petition deprives the state court of jurisdiction as soon as filed and served upon the state court, but that jurisdiction returns to

---

[6]    The Department contends that they have waived this claim by failing to raise it at the hearings below.  However, it is clear from the record that Mother continuously maintained that the proceedings were stayed, and the juvenile court understood this was their position.

the state court when a remand order is filed and served on the state court . . . ." (*People v. Bogart* (1970) 7 Cal.App.3d 257, 264.)

Federal courts are courts of limited jurisdiction, having subject-matter jurisdiction only over matters authorized by the federal Constitution and Congress. (See, e.g., *Kokkonen v. Guardian Life Ins. Co. of Am.* (1994) 511 U.S. 375, 377 [114 S.Ct. 1673, 128 L.Ed.2d 391].) "The removal statute is strictly construed against removal jurisdiction, and the burden of establishing federal jurisdiction falls to the party invoking the statute. [Citation.]" (*Calif. ex rel. Lockyer v. Dynegy, Inc.* (9th Cir. 2004) 375 F.3d 831, 838, fn. omitted.)

"[F]ederal courts have long recognized that state courts have jurisdiction over child welfare determinations, including matters pertaining to undocumented minors, absent an express federal provision to the contrary. Federal law imposes requirements on state dependency plans and recognizes 'the institutional competence of state courts as the appropriate forum for child welfare determinations regarding abuse, neglect, or abandonment, and a child's best interests.' [Citations.]" (*In re Y.M.* (2012) 207 Cal.App.4th 892, 908.)

Here, the federal court did not have original jurisdiction over the dependency proceeding. Mother made it clear that she was seeking to transfer the juvenile dependency proceeding to the federal court but no such authority exists to have the matter transferred to federal court. The federal court confirmed this determination by eventually

12

concluding it did not have subject-matter jurisdiction. The Ninth Circuit Court of Appeals has deemed the proceedings "frivilous." The NOR lacked all merit.

We further conclude that the juvenile court was not required to stay the proceedings while the NOR was pending. "It is well settled that if, upon the face of the record, including the petition for removal, a suit does not appear to be a removable one, then the state court is not bound to surrender its jurisdiction, and may proceed as if no application for removal had been made. [Citations.]" (*Madisonville Traction Co. v. St. Bernard Mining Co.* (1905) 196 U.S. 239, 245 [25 S.Ct. 251, 49 L.Ed. 462]; see also *Nichols v. Southern Pacific Co.* (1943) 58 Cal.App.2d 91, 97.)

It was clear on its face that the NOR was not valid. Mother filed the NOR either to delay the proceedings or due to her litigious nature. A parent cannot be allowed to stay the proceedings in a juvenile dependency matter by filing clearly unmeritorious documents. The juvenile court properly continued the proceedings in state court, and any orders made during the time the NOR was filed are upheld.

III

REASONABLE REUNIFICATION SERVICES

Father claims that he was not given reasonable reunification services. He claims that he did not receive 12 months of reunification services since the proceedings were suspended while the NOR was filed. We have already rejected that the matter was stayed. Father does not contend that he relied upon the suspension in refusing to participate in services. As such, we reject this position.

13

He further claims he did not receive adequate visitation once I. and T. were placed with M.K., the services were not promptly started after the disposition hearing, and the services were inadequate because they did not include substance abuse treatment or domestic violence classes.[7]

We find Father waived and forfeited these issues by failing to raise them in the juvenile court below. "Many dependency cases have held that a parent's failure to object or raise certain issues in the juvenile court prevents the parent from presenting the issue to the appellate court. [Citations.] As some of these courts have noted, any other rule would permit a party to trifle with the courts. The party could deliberately stand by in silence and thereby permit the proceedings to reach a conclusion in which the party could acquiesce if favorable and avoid if unfavorable. [Citation.]" (*In re Lorenzo C.* (1997) 54 Cal.App.4th 1330, 1338-1339; see also *In re Christina L.* (1992) 3 Cal.App.4th 404, 416 [failure to object to adequacy of reunification services waived issue on appeal].)

Here, neither the juvenile court nor the Department was put on notice that reunification services were inadequate, that Father had been denied visitation, or that the service referrals were too late, even though Father had ample opportunity to raise the issues below. Thus, Father's attempt to challenge the adequacy of reunification services is an attempt to raise a new issue, which was not presented to the juvenile court. We find the issue waived, and we need not consider it further. (*In re Christina L., supra,* 3

---

[7] Although Father claims he was denied substance abuse classes, the amended section 300 petition deleted the substance abuse allegation.

14

Cal.App.4th at p. 416.) In any event, we would find that reunification services to Father were reasonable.

"Family preservation, with the attendant reunification plan and reunification services, is the first priority when child dependency proceedings are commenced. [Citation.] Reunification services implement 'the law's strong preference for maintaining the family relationships if at all possible.'" (*In re Elizabeth R.* (1995) 35 Cal.App.4th 1774, 1787.) The Department must make a good faith effort to develop and implement reasonable services responsive to the unique needs of each family. (*In re Kristin W.* (1990) 222 Cal.App.3d 234, 254.) "The adequacy of a reunification plan and the department's efforts are judged according to the circumstances of each case." (*In re Ronell A.* (1996) 44 Cal.App.4th 1352, 1362.)

"In reviewing the reasonableness of the services provided, this court must view the evidence in a light most favorable to the respondent. We must indulge in all legitimate and reasonable inferences to uphold the verdict. If there is substantial evidence supporting the judgment, our duty ends and the judgment must not be disturbed. [Citations.]" (*In re Misako R.* (1991) 2 Cal.App.4th 538, 545.)

First, as to Father's claim that the commencement of reunification services was improperly delayed, Father was granted reunification services at the jurisdictional/dispositional hearing conducted on August 24, 2011. At that time, Father was incarcerated for attacking Mother and Grandmother. Upon his release, he failed to contact the Department, and the Department was unable to locate him. Father did not

15

contact the Department until January 26, 2012.  The Department completed the referrals for Father on February 6, 2012.  Any delay in services was caused by Father's failure to contact the Department.  Once the Department was in contact with Father, it immediately commenced referrals for him.

Second, Father's complaint about visitation is unmeritorious.  The Department was forced to conduct visitation at its office after Mother attempted to take I. and T. from M.K. at a visit on October 26, 2011.  Thereafter, the Department set up a visitation schedule.  However, Father refused to attend the visits.  The Department was not required to set up telephonic visits or other visitation options when Father failed to avail himself of the visitation set up by the Department.

Third, Father relies upon *Amanda H. v. Superior Court* (2008) 166 Cal.App.4th 1340 to support his claim that the Department's failure to order a domestic violence course requires that services be reinstated.  In *Amanda H*., the social worker made statements at the six-month review hearing that gave both the mother and the juvenile court the "distinct impression" that the mother was enrolled in all the required court-ordered programs, and the social worker did not inform the mother she was required to enroll in a separate domestic violence program until just before the 12–month review hearing at which services were terminated.  (*Id*. at p. 1346.)  The appellate court remanded the matter and ordered additional services be afforded the mother.  (*Id.* at p. 1348.)

Here, Father's reunification plan did not include a domestic violence class, and none was ever ordered. Since Father never raised an objection below, there is nothing in the record as to why the Department did not make this part of the services. It is reasonable to infer from the record we do have that the Department considered that any domestic violence was as a result of defendant's mental illness and that addressing his mental illness would resolve the matter.

Nonetheless, the reason for terminating services at the 12-month review hearing was that Father had failed to engage in or complete any of the services that were offered to him. Even had Father been ordered to participate in a domestic violence class and had completed it, the other issues would remain. Father never sought a psychological evaluation or medical evaluation or enrolled in a parenting program. As such, his failure to complete all of his reunification services caused the termination of services.

Based on the foregoing, Father waived his claim that he was not given reasonable reunification services. In any event, we find the trial court properly terminated Father's reunification services and set a section 366.26 hearing.

IV

DISPOSITION

The petitions for extraordinary writ are DENIED.  The stay imposed on the section

366.26 hearing by order of this court on February 25, 2013, is LIFTED.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

RICHLI

J.

We concur:

McKINSTER

Acting P. J.

MILLER

J.